Michael Santo POLIZZI et al.,
Petitioners-Appellants,

v.

UNITED STATES of America,
Respondent-Appellee.

EMPRISE CORPORATION,
Petitioner-Appellant,

v.

UNITED STATES of America,
Respondent-Appellee.

Nos. 75–1860, 75–2226.

United States Court of Appeals,
Ninth Circuit.

April 7, 1976.

[redacted]

---

Robert E. Hinerfeld (argued), of Murphy, Thornton, Hinerfeld & Cahill, Los Angeles, Cal., Neil H. Fink (argued), Bellanca & Beattie, Detroit, Mich., Irl B. Baris (argued), Newmark & Baris, St. Louis, Mo., for petitioners-appellants.

Thomas E. Kotoske, Atty. in charge (argued), Dept. of Justice, Washington, D.C., for respondent-appellee.

Before DUNIWAY, CARTER and TRASK, Circuit Judges.

DUNIWAY, Circuit Judge:

In 1972 a jury found the appellants guilty of violating 18 U.S.C. §§ 371 and 1952 by conspiring to use interstate facilities as part of a scheme to acquire a Las Vegas, Nevada, casino, in violation of Nevada law. They appealed and we affirmed. *United States v. Polizzi,* 9 Cir., 1974, 500 F.2d 856, *cert. denied,* 1975, 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820. The individual defendants then filed a motion in the district court, under 28 U.S.C. § 2255, to vacate and set aside their sentences. The corporate petitioner, Emprise, asked for the same relief via a writ of error coram nobis. *See United States v. Morgan,* 1954, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248. The district court denied relief and all defendants appeal. We affirm.

I. *Adverse Publicity.*

During the trial, which took place in Los Angeles, the area's two major newspapers, the Times and Herald-Examiner, ran front-page stories linking the defendants to the Mafia, and reprinting the substance of discussions held outside the presence of the jury. Also, a local television broadcaster compared the alleged gambling activities of two defendants, Polizzi and Zerilli, with incidents portrayed in the movie *The Godfather,* which had just been released. To assay the effect of this and other publicity on the jury, which was not sequestered, the district judge questioned the jurors *in camera* on three occasions, twice during trial and once after they had returned a verdict but before they were dismissed. The judge decided that the jury had reached its verdict on the evidence before it and had not been improperly influenced by the news accounts. On direct appeal we rejected claims of error based on these events. *United States v. Polizzi, supra,* 500 F.2d at 880–87. What happened, and what the district judge did about it, are fully described in our opinion. We do not repeat here what we said there; we assume that the reader is familiar with it.

In the present appeal, defendants rely on what they say is a new ground not previously presented: that the district judge, by interrogating the jurors *in camera,* deprived the defendants of their rights (1) to due process and a public trial, (2) to confront witnesses against them, and (3) to the assistance of counsel.

A. *Propriety of Collateral Attack.*

[redacted] Before reaching the merits of these claims, we consider whether they are properly before us. Although principles of *res judicata* do not bar a prisoner from relitigating on habeas corpus or under § 2255 or on coram nobis issues raised in the original appeal, a district court may refuse to entertain a repetitive petition absent a showing of manifest injustice or a change in law. *Kaufman v. United States,* 1969, 394 U.S. 217, 226–27 & n.8, 89 S.Ct. 1068, 22 L.Ed.2d 227; *Clayton v. United States,* 9

Cir., 1971, 447 F.2d 476. *See also United States ex rel. Schnitzler v. Follette,* 2 Cir., 1969, 406 F.2d 319, *cert. denied,* 395 U.S. 926, 89 S.Ct. 1783, 23 L.Ed.2d 244. As neither manifest injustice nor a change in law is present here, dismissal is proper if petitioners are raising an issue previously determined "on the merits." *Kaufman v. United States, supra,* 394 U.S. at 227 n.8, 89 S.Ct. 1068.

To decide whether the reason for reversal presented here is a "ground" which this court passed upon when we refused to overturn the conviction on the direct appeal, rather than a new ground upon which we did not pass, we apply the standard stated by the Supreme Court in *Sanders v. United States,* 1963, 373 U.S. 1, 16, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148:

> By "ground" we mean simply a sufficient legal basis for granting the relief sought by the applicant. For example, the contention that an involuntary confession was admitted in evidence against him is a distinct ground for federal collateral relief. But a claim of involuntary confession predicated on alleged psychological coercion does not raise a different "ground" than does one predicated on alleged physical coercion. In other words, identical grounds may often be proved by different factual allegations. So also, identical grounds may often be supported by different legal arguments, cf. *Wilson v. Cook,* 327 U.S. 474, 481, 66 S.Ct. 663, 667, 90 L.Ed. 793; *Dewey v. Des Moines,* 173 U.S. 193, 198, 19 S.Ct. 379, 380–381, 43 L.Ed. 665, or be couched in different language, *United States v. Jones,* 194 F.Supp. 421 (D.C.D.Kan.1961) (dictum), aff'd mem., 297 F.2d 835 (C.A. 10th Cir., 1962), or varv in immaterial respects, *Stilwell v. United States Marshals,* 192 F.2d 853 (C.A. 4th Cir., 1961) (*per curiam* ). Should doubts arise in particular cases as to whether two grounds are different or the same, they should be resolved in favor of the applicant.

The rule is more easily stated than applied. None of the four cases cited in *Sanders* is analogous to the one at bar. The claim now advanced by the defendants is not truly distinct from that raised on the initial appeal, cf. *Wilson v. Cook, supra; Dewey v. Des Moines, supra;* neither is it identical to it. See *Clayton v. United States, supra.* Counsel did point out on the earlier appeal—and we noted in our opinion—that the questioning of the jurors was conducted *in camera,* with neither defendants nor their counsel present, much less participating. *United States v. Polizzi, supra,* 500 F.2d at 880. But the focus of the arguments and of our opinion was on the substantive sufficiency of the judge's questioning of the jurors, not on the absence of the defendants and their counsel.

■ Nevertheless, the *in camera* nature of the proceedings and the absence of defendants and their counsel were as obvious as the proverbial sore thumb. Defendants' counsel were not young lawyers learning at their clients' expense, or, as appointed counsel, at government expense, how to try cases and argue appeals. Some of them are among the most experienced, able and astute lawyers who appear before us. The trial judge could not believe that they overlooked the point that they now belatedly seek to raise and we have the same doubts about it that he had. We think that the point that defendants now make is not now available to them. What counsel did is the kind of tactical decision that counsel can make without consulting with or getting the approval of their clients. See *Kuhl v. United States,* 9 Cir., in banc, 1966, 370 F.2d 20, 26–27.

Moreover, we decline to deal with the subsidiary claim that the refusal of the court to allow counsel to cross-examine the jurors caused the questioning of the jurors to be insufficiently probative. That question was fully briefed, argued and decided on the appeal. See 500 F.2d at 881–84, 886–87. Neither the trial court nor this court is required to consider it again.

Nevertheless, because it is always possible that higher authority may disagree with us, we do further consider the argument as to the *in camera* character of the questioning of the jurors.

## B. *Interrogation During Trial.*

■ As to these two interrogations, we hold, first, that neither the trial court nor this court is required to consider the *in camera* question. Not only was it not raised on appeal; there was no objection in the trial court. On the two occasions when the question of prejudicial publicity during the trial was raised, the judge examined the jurors separately and *in camera* about it. In each case, he immediately told counsel what he had done and what his conclusions were. In each case counsel promptly received a complete transcript of the *in camera* proceedings as part of the daily transcript. In each case counsel could have claimed, in support of motions for mistrial or for further examination of the jurors, that defendants and their counsel should have been present and that counsel should have been allowed to put questions to the jurors. Counsel did not do so, either during the trial or when they appealed to this court. There are good tactical reasons for their failure to make the claim. Their participation in examining the jurors could well have prejudiced the jurors against them and, through them, against their clients. Moreover, cross-examination of the jurors in open court might well have been counter-productive, alerting the jurors to news that had escaped their attention. *See Silverthorne v. United States,* 9 Cir., 1968, 400 F.2d 627, 643. Only counsel is sufficiently knowledgeable about the problems involved to make a decision whether to press the question or to abandon it. *See Kuhl v. United States, supra; McCullough v. United States,* 9 Cir., 1968, 403 F.2d 1013, 1315.

■ We hold second, that, assuming that we are required to consider the argument now made, it lacks merit. We approved the precise procedure followed by the district court—individual interviews of each juror by the judge with only a court reporter present—in *Parker v. United States,* 1968, 404 F.2d 1193, 1197, *cert. denied,* 1969, 394 U.S. 1004, 89 S.Ct. 1602, 22 L.Ed.2d 782. *See also Silverthorne v. United States, supra,* 400 F.2d at 644. We see no reason to re-examine that holding, especially when we have already held on appeal that what the judge did was sufficient to assure that the defendants suffered no prejudice. *See United States v. Jorgenson,* 10 Cir., 1971, 451 F.2d 516, 520–21, *cert. denied,* 1972, 405 U.S. 922, 92 S.Ct. 959, 30 L.Ed.2d 793.

## C. *Interrogation After Verdict.*

Defendant's counsel did ask to be present and to be permitted to put questions to the jurors when the judge decided, after the verdict and before the jury was excused, to question the jurors again. These requests were denied, but the judge told counsel that he would put such questions as counsel asked him to. They proposed a number of questions, and the judge did put most but not all of them to the jurors.

On appeal counsel did not claim that it was error to exclude them and their counsel from the questioning. What we have said in Part I A of this opinion is equally applicable here, as it relates to the failure to raise the question on appeal, but not as it relates to failure to raise the question in the trial court. Counsel did raise it in the trial court but abandoned it on appeal.

As before, however, we consider the claims now made. The claims are that the judge's questioning of the jurors *in camera* deprived the defendants of three rights guaranteed by the Sixth Amendment to the Constitution, "the right to a . . . public trial, . . . to be confronted with the witnesses against [them], . . . and to have the assistance of counsel for [their] defense," and to the due process guaranteed them by the Fifth Amendment.

### 1. *Public Trial.*

■ The general rule is that this right, taken together with the right to due process, includes a right of both defendants and their counsel to be present at all stages of the trial from arraignment to verdict and discharge of the jury. *See Rogers v. United States,* 1975, 422 U.S. 35, 38–9, 95 S.Ct. 2091, 45 L.Ed.2d 1. But, like so many other rights, this one is not absolute. For example, an unruly defendant may be excluded

and the trial may be continued in his absence. *Illinois v. Allen,* 1970, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353. The Court has said that the existence of a right to be present depends upon a conclusion that absence could, under some set of circumstances, be harmful. Due process does not assure "the privilege of presence when presence would be useless, or the benefit but a shadow." *Snyder v. Massachusetts,* 1934, 291 U.S. 97, 106–07, 54 S.Ct. 330, 332, 78 L.Ed. 674 (Cardozo, J.).

 Moreover, even improper exclusion of a defendant from a "critical" portion of the trial does not automatically require reversal, if in the particular case the defendant's absence was harmless beyond a reasonable doubt. *Rogers v. United States, supra,* 1975, 422 U.S. at 40, 95 S.Ct. 2091 (dictum); *Bustamante v. Cardwell,* 9 Cir., 1974, 497 F.2d 556. Our decision on the appeal is, at the least, a holding that the judge's questioning of the jurors after the verdict was proper and sufficient. See 500 F.2d at 880–87. Moreover, our decision in *Parker v. United States, supra,* is just as applicable to the post-verdict interviews of the jurors as to the pre-verdict interviews.[1] The rights to a public trial and to due process were not improperly infringed.

### 2. Confrontation.

 The right defined in the Sixth Amendment is "to be confronted with the witnesses against him." Jurors are not witnesses against the defendant.

### 3. Assistance of Counsel.

 This right does not require that counsel be present or allowed to put questions when the judge is questioning the jurors as he did in this case. There are good reasons why this is so. See the opinion of Judge Friendly in *Miller v. United*

*States,* 2 Cir., 1968, 403 F.2d 77 at pp. 81–82.

### II. Validity of the Indictments.

Defendants also argue that the indictments under which they were charged should be dismissed because, they say, two Special Attorneys who appeared before the Grand Jury were not authorized as required by 28 U.S.C. § 515(a). The errors to which they point are that the authorization letters lack specificity and that the Attorney-General's signature on the letters is not authentic.

 Fed.R.Crim.P. 12(b)(2) requires that "objections based on defects in the indictment . . . must be raised prior to trial." Here, there was no such pre-trial challenge. Absent "cause"—proof of actual prejudice or excuse for failure to comply with Rule 12(b)(2)—defendants' failure to object precludes our granting relief. *Davis v. United States,* 1973, 411 U.S. 233, 243–45, 93 S.Ct. 1577, 36 L.Ed.2d 216; *Shotwell Mfg. Co. v. United States,* 1963, 371 U.S. 341, 362–63, 83 S.Ct. 448, 9 L.Ed.2d 357.

Defendants do not, indeed could not on this record, assert that they have suffered prejudice. The irregularities of which they complain are technical, far less likely to be determinative of the outcome than the claimed discriminatory jury selection held not prejudicial in *Davis v. United States* and *Shotwell Mfg. Co. v. United States.* Government compliance with the procedures that defendants demand would not have lessened the probability of indictment.

 Defendants' excuse is likewise deficient. At oral argument in the district court, counsel stated that he had never considered the objections raised here until reading *United States v. Williams,* W.D. Mo., 1974, 65 F.R.D. 422.[2] Good faith igno-

---

1. It could be argued, on the authority of *Snyder v. Massachusetts, supra,* that the judge's post-verdict interview with the jurors was not part of the trial and so the defendants and their counsel had no right to be present. See 291 U.S. at 113–14, 54 S.Ct. 330. We need not, and do not, decide that question.

2. The district court in *Williams* suggested that 28 U.S.C. § 515(a) requires letters of authorization to contain "a specific direction to proceed against particular named defendants for specifically stated violations . . . ." 65 F.R.D. at 446. That has never been the law in this circuit, *United States v. Alessio,* 9 Cir., 1976, 528 F.2d 1079, nor is it any longer the law in the

rance, however, does not excuse a failure to comply with Rule 12(b)(2). *Dumont v. Estelle,* 5 Cir., 1975, 513 F.2d 793, 798.

Affirmed.

Western District of Missouri. *See United States v. Agrusa,* 8 Cir., 1975, 520 F.2d 370, *rev'g.,* W.D.Mo., 392 F.Supp. 3; *United States v. Wrigley,* 8 Cir., 1975, 520 F.2d 362, *rev'g.,* W.D.Mo., 392 F.Supp. 14.