Anthony ANTON and Judi Anton, as
representatives for Perry Anton,
their child, Plaintiffs and Appellants,

v.

Allan P. THOMAS, M.D.,
Defendant and Appellee.

No. 880658–CA.

Court of Appeals of Utah.

Feb. 12, 1991.

B. Ray Zoll (argued), Tom D. Branch, James C. Daugherty, Salt Lake City, for plaintiffs and appellants.

Gary D. Stott (argued), JoAnn E. Carnahan, Richards, Brandt, Miller & Nelson, Salt Lake City, for defendant and appellee.

Before GARFF, JACKSON and ORME, JJ.

OPINION

JACKSON, Judge:

This is a medical malpractice action based upon the alleged failure of appellee Dr. Allan Thomas to diagnose a urethral blockage suffered by appellants' minor child Perry Anton. By special verdict, a jury found "no negligence" in favor of Thomas. Appellants (referred to collectively as "The Antons") appeal. On appeal, the Antons assert errors at trial as follows: (1) the trial court's failure to qualify a witness as an expert, (2) jury instruction sixteen misled the jury concerning standard of care, (3) the trial court's denial of a motion for a new trial, and (4) the jury's verdict of "no negligence" was not supported by the evidence. We affirm.

Dr. Thomas was the Antons' first pediatrician when Perry Anton was born in 1976. There is a dispute as to how often Thomas saw Perry during his first year; the parties agree the last time Thomas treated Perry was in April 1982. Over a period of five years, according to the Antons, Perry was examined and treated by Thomas for several complaints including recurring urination problems. Thomas analyzed Perry's urine on several occasions and concluded his urination problems were behavioral in nature.

The Antons had Perry evaluated by a pediatric urologist, Dr. Richard Lee, in 1981, when Perry was five years old. Perry's problems included long-standing difficulty with urination, crying in the night, pain with urination and day and night incontinence. Dr. Lee performed several urological tests and diagnosed posterior ur-

ethral valves [1] which were blocking Perry's passage of urine. Dr. Lee prescribed a catheter to allow for voluntary urination, and he operated on Perry eleven days later. Three more operations followed within the next two months and urethral implant surgery was performed in September 1982. Follow-up tests revealed marked improvement in Perry's upper urinary tract and he required no further surgery. The Antons testified that as a result of his urinary tract difficulties, Perry is on high blood pressure medication and must limit his physical activities.

Expert testimony at trial indicated that posterior urethral valves is a somewhat rare condition. There was conflicting testimony as to what action, if any, should have been taken by Thomas given the Antons' repeated complaints concerning Perry's health. The Antons testified they had reported to Thomas on several occasions that Perry seemed to have difficulty urinating, that his growth was behind that of his peers, that he had little or no appetite, and that he had daytime incontinence. Thomas's testimony was not in full accord on these points.

The Antons sued Thomas for medical malpractice, claiming that Perry suffered permanent impairment and disability as a result of Thomas's failure to diagnose the urethral blockage. A four day trial ensued. The jury returned a special verdict finding Thomas was not negligent in his treatment of Perry. The Antons' motion for a new trial was denied and they appealed.

I. EXPERT TESTIMONY

With few exceptions, a plaintiff in a medical negligence case must introduce expert testimony to establish the standard of care by which the doctor's conduct is to be measured. *Butterfield v. Okubo,* 790 P.2d 94, 96–97 (Utah Ct.App.1990); *Chadwick v. Nielsen,* 763 P.2d 817, 821 (Utah Ct.App. 1988); *Robinson v. Intermountain Health*

---

**1.** Posterior urethral valves is a birth defect that obstructs the flow of urine through the urethra in the penis.

*Care,* 740 P.2d 262, 264 (Utah Ct.App. 1987). The Antons sought to have Dr. James H. Howell qualified as an expert to testify as to the standard of care provided by pediatricians in Utah at the time of the facts in controversy, and to give his opinion concerning Thomas's performance related to that standard. Dr. Howell testified he was a graduate of the University of Utah College of Medicine; that he was the medical director for the Wyoming State Training School at the time of trial; that he was in contact with physicians in the state of Utah on a regular basis; and that he had reviewed Perry Anton's medical records. The trial court declined to qualify Dr. Howell as an expert witness because sufficient foundation for his opinion was not laid.

■ The trial court has discretion to determine the admissibility of expert testimony, and to determine if the witness is qualified to give an opinion on a particular matter. *Gaw v. State Dept. of Transp.,* 798 P.2d 1130, 1134 (Utah Ct.App.1990); Utah R.Evid. 702. Such a ruling will not be reversed unless the trial court abused its discretion in excluding the expert testimony, and, even then, only if the appellant can show "the excluded evidence would probably have had a substantial influence in bringing about a different verdict." *Gaw,* 798 P.2d at 1133–34 (quoting *Redevelopment Agency v. Tanner,* 740 P.2d 1296, 1303–04 (Utah 1987)). Admission of expert testimony requires proper foundation to qualify the witness. *Burton v. Youngblood,* 711 P.2d 245, 248 (Utah 1985) (expert witness's testimony excluded because counsel failed to elicit necessary foundation); *Schindler v. Schindler,* 776 P.2d 84, 89 (Utah Ct.App.1989) (psychologist's proffered testimony was inadmissible due to lack of foundation); *State v. Pendergrass,* 803 P.2d 1261, 1265 (Utah Ct.App.1990) (expert testimony excluded due to lack of foundation).

The parties agree, and the trial court found the *Youngblood* standard to be germane to the present case. Defendant Youngblood, a board-certified plastic surgeon, performed an upper eyelid surgery, blepharoplasty, on plaintiff Burton. Bur-

ton developed complications as a result of the surgery and filed an action alleging medical negligence. On appeal, Burton asserted that the trial court erred in excluding testimony of an ocular plastic surgeon on the basis that the expert was not qualified to testify as to the standard of care of Youngblood, a general plastic surgeon who performed ocular surgery. In affirming, the Utah Supreme Court observed, "[h]ad Burton's counsel laid adequate foundation to establish that the ... methods governing blepharoplastic surgery were identical, regardless of whether the physician was a general or specialized plastic surgeon ... then the expert would have been free to testify." *Youngblood,* 711 P.2d at 248 (citations omitted).

■ Applying *Youngblood* to the present case, the trial court did not abuse its discretion in not qualifying Howell as an expert witness. No foundation was laid or sought to be laid regarding Howell's qualifications to testify concerning the standard of care in Utah. At the time of trial, and presently, Howell is a director of an institution for mentally retarded persons of all ages in Wyoming. His experience with pediatric patients is limited to his above employment and in medical school while functioning as an intern.

The Antons contend even though Howell is a general practitioner, he could still be called as an expert witness to give an opinion on the standard of care even a general practitioner should use in *referring* a patient to another specialist, in this case, a urologist. At trial, however, the Antons' counsel sought only to elicit an opinion from Howell concerning the standard of care of pediatricians and physicians in Utah. These questions did not specifically address referral practices but treatment practices. We conclude that there was no error in not allowing Howell to testify as an expert witness.

## II. JURY INSTRUCTION

The Antons also allege that instruction sixteen altered the applicable standard of care for this case. They characterize instruction sixteen as inappropriately urging

the jury to apply a lower standard of care than should have been applicable to Thomas.

■ "In objecting to the giving of an instruction, a party must state distinctly the matter to which he objects and the grounds for his objection." Utah R.Civ.P. 51. Moreover, case law suggests that arguments addressed to deficiencies in a jury instruction will not be entertained on appeal unless an instruction that would have cured the deficiencies was tendered below. *Kesler v. Rogers*, 542 P.2d 354 (Utah 1975). The Antons objected to instruction sixteen in the trial court; however, counsel for the Antons failed to state with particularity what his objection was, or to propose an alternate instruction.[2] Because we find the Antons' objection does not meet the requirements of Utah R.Civ.P. 51 for appealing a jury instruction, we do not address this claim.

### III. MOTION FOR A NEW TRIAL

■ The Antons also claim the trial court erred in denying their motion for a new trial. That motion was premised on jury instruction sixteen, already treated above, and on a number of statements made by defense counsel in closing argument. In reviewing a court's denial of a motion for a new trial, the ruling on such a motion will be disturbed on appeal "only for an abuse of discretion." *Erickson v. Wasatch Manor Ass'n, Inc.*, 802 P.2d 1323, 1326 (Utah Ct.App.1990); *Moon Lake Elec. v. Ultrasystems W. Const.*, 767 P.2d 125, 128 (Utah Ct.App.1988).

As to comments made in closing argument, in view of the facts that (1) no objection whatsoever was interposed by counsel for the Antons during closing argument, (2) their counsel took full advantage of his opportunity on rebuttal to refute the statements made by Thomas's counsel, and (3)

counsel for the Antons himself, on rebuttal, employed some of the same usages of which he now complains, we see no abuse of discretion in the trial court's denial of the Antons' motion for a new trial.

### IV. SUFFICIENCY OF THE EVIDENCE

■ The Antons' last claim of error concerns the sufficiency of the evidence presented at trial. They argue that based on that evidence, the verdict of "no negligence" was not reasonable. In attacking a jury's verdict, an appellant must "marshal all the evidence supporting the verdict and then demonstrate that, even viewing the evidence in the light most favorable to that verdict, the evidence is insufficient to support it." *Western Fiberglass v. Kirton, McConkie & Bushnell*, 789 P.2d 34, 35 (Utah Ct.App.1990). A jury verdict will not be overturned "so long as there is ample record evidence to support the jury's finding." *Penrod v. Carter*, 737 P.2d 199, 200 (Utah 1987).

■ While there was admittedly evidence to the contrary, there is evidence in the record to support the jury's verdict of "no negligence" in the present case. At trial, two expert witnesses testified on behalf of Thomas. They testified that Perry's condition was extremely rare and difficult to diagnose. Several common symptoms of post urethral valves were not present, according to defendant Thomas's testimony. An expert witness who testified on behalf of the Antons gave his opinion that Thomas should have diagnosed Perry's problem by the time Perry was six months old. However, testimony by the Antons and by Thomas indicated that Perry's symptoms did not arise until February of 1979, when Perry was over two years old. Finally, there was evidence presented that Perry had been examined by two other

---

**2.** The trial court instructed counsel for both parties that if they had any objections to any of the proposed jury instructions, that a replacement instruction be prepared, or case law offered that indicated the instruction was erroneous. The Antons' counsel proposed to eliminate instruction sixteen, stating merely that the standard of care had already been covered by other

instructions. Having no support to the contrary, the court gave instruction sixteen as a correct statement of the law. At the hearing on the motion for a new trial, the trial court again asked counsel for the Antons if he had any case law to demonstrate that instruction sixteen was erroneously given to the jury. None was offered.

pediatricians, neither of whom had diagnosed his condition as post urethral valves.

We are aware of the personal and financial strain that Perry's medical problems have been to his family, but we are constrained to recognize that the jury determined the credibility of the witnesses, weighed the evidence, and based its verdict thereon. *See, e.g., Gillespie v. Southern Utah State College*, 669 P.2d 861, 864 (Utah 1983). The jury's verdict must stand because it is supported by competent evidence. *See Bundy v. Century Equip.*, 692 P.2d 754, 758 (Utah 1984). We affirm.

GARFF and ORME, JJ., concur.