STATE of Utah, Plaintiff and Appellee,

v.

Victor Lee SEVERANCE, Defendant and Appellant.

No. 910421–CA.

Court of Appeals of Utah.

March 11, 1992.

Michael D. Murphy, Kaysville, for defendant and appellant.

R. Paul Van Dam, Atty. Gen., and Marian Decker, Asst. Atty. Gen., Salt Lake City, for plaintiff and appellee.

Before GARFF, JACKSON and ORME, JJ.

## OPINION

GARFF, Judge:

Victor Lee Severance appeals his conviction of aggravated robbery, a first degree felony. Utah Code Ann. § 76–6–302 (1990). We affirm.

## FACTS

Because Severance is challenging the court's decision to admit evidence from the showup identification, we cite the facts in the light most favorable to that decision. *State v. Ramirez*, 817 P.2d 774, 782 (Utah 1991).

On August 12, 1986, at approximately 1:30 p.m., Severance entered the Showtime Video Store in Bountiful, Utah. He walked around the store for five to ten minutes. After the two or three other customers present in the store had left, Severance approached Sheryl Hurley, the store clerk, who was standing by the cash register. Hurley looked directly at Severance as he approached the front counter and stopped two feet in front of her. Severance asked her if she had change for a quarter. Hurley said, "sure," and opened the cash reg-

ister. Severance then pulled a knife, which had a blade approximately five inches long, and stated, "this is a robbery. Give me all the money." Hurley handed Severance approximately sixty dollars in ones, fives and tens. Severance demanded, "Where are the twenties?" Hurley lifted the register drawer and told him there were no twenties. Severance turned and walked out of the video store.

During the five to ten minutes Severance was in the store prior to the robbery, Hurley observed him at various times from distances of approximately five to ten feet and estimated that she looked directly at him for thirty seconds. Hurley testified she looked directly at Severance for an additional thirty seconds during the actual robbery.

Once Severance exited the video store, Hurley followed him to see where he was going. Upon leaving the store, she noticed another man, James D. Monson, as he was about to enter the store next door. Hurley grabbed Monson's arm, pointed to Severance and told Monson she had just been robbed. Monson instructed Hurley to return to the video store and call the police while he followed Severance to see where he was going.

Monson followed Severance as he left the shopping center. Monson saw Severance get into an older model green Chrysler parked nearby. Although the car's license plates were dirty such that Monson could not make out the number, he still observed that the blue and yellow plates were out of state. Monson continued to watch Severance as he left the shopping center driving west.

When Monson returned to the video store, he discovered Hurley had not yet called the police. He then called the police and waited with Hurley for them to arrive.

Hurley described Severance to Bountiful City Police Officer Steve Gray as follows: the robber was between thirty-five and forty years old, slender, not stocky, approximately six feet or six feet one inch tall, weighing about 180 to 190 pounds, "mean" looking, having a square jaw, whiskers, a cleft chin, and light brown hair that was

thinning on top with long sideburns reaching the bottom of his ears. His hands were dirty, especially under his fingernails, and he was wearing a light blue T-shirt and light blue jeans.

Monson described Severance as being approximately six feet one inch tall and weighing approximately 190 pounds. He said Severance was wearing blue jeans and a blue T-shirt with gold horizontal stripes.

Approximately thirty minutes after the robbery, Clearfield City Police Officer Jeff Flowers received a broadcast from the Bountiful Police requesting all officers to be on the lookout for the vehicle described by Monson. A few minutes after receiving the broadcast, Officer Flowers noticed a vehicle matching the description. He followed the vehicle as it exited north from Interstate 15 and stopped at a gas station in Clearfield, a town near Bountiful. While Officer Flowers ran a warrants check, Severance removed his blue jeans and put on a pair of shorts.

After obtaining Severance's identification, Officer Flowers escorted Severance to the Clearfield Police Department holding tank. While Severance was in the holding tank, Officer Flowers observed him wet and slick back his hair.

At the time of Severance's arrest, Officer Gray observed that he appeared as though he had recently shaved because there was "less beard growth" on the sides of his face "than on his chin and mustache area" and because there was a red mark on one side of his face. Severance admitted he had a shaving kit in his car. Officer Gray also found a knife similar to the one described by Hurley in Severance's vehicle.

Shortly after the robbery, Hurley and Monson arrived at the Clearfield Police Department. Prior to making any identification, the Bountiful Police officers told them that a suspect was in custody who matched the description Hurley had given of the robber, that the suspect had wet his hair down and had changed his clothes in order to change his appearance, and that he talked like a "con."

Approximately one and a half hours after the robbery, Hurley was given an opportunity to view Severance from a distance of ten to fifteen feet. He was in a holding cell along with a man whom Hurley supposed was a police officer. Hurley positively identified Severance as the man who robbed the store. She also noted that he had changed his clothes and that part of his sideburns appeared to be clean shaven, but that he still had whiskers.

Monson, upon seeing Severance's vehicle as it was parked at the Clearfield gas station, positively identified the car as being the one he had seen the robber enter and drive away in earlier that day. Monson also identified Severance as being the "same general height and weight" as the robber. However, he was unable to positively identify him at the Clearfield Police Department.

Severance was charged with aggravated robbery, a first degree felony, in violation of Utah Code Ann. § 76-6-302. Prior to a jury trial held November 13, 1986, Severance moved to suppress evidence of the showup identification. Following a hearing, the trial court denied the motion concluding that the identification was reliable based on the totality of the circumstances.

In a letter dated September 25, 1986, Severance informed counsel that shortly before the robbery, he stayed at the "Broken Wheel or Wagon Wheel Motel" in Fillmore, Utah. Severance requested his counsel to contact the owners to determine whether they could recall whether he had sideburns the night of August 10, 1986. At a hearing held October 16, 1986 wherein the court considered Severance's request that his counsel withdraw, Severance mistakenly informed both the trial court and counsel that he had stayed at the Best Western Motel in Fillmore, Utah. At the hearing, the court asked defense counsel to inquire of "whoever this is down in Fillmore" concerning defendant's allegation and defense counsel agreed to do so.

Defense counsel told Severance he would show a photograph of defendant to motel management to determine whether they could remember whether Severance had sideburns during the time he stayed at the motel. Defense counsel did make a telephone call to the Best Western Motel. However, because Severance apparently had not stayed at the Best Western Motel, nothing came of this conversation.

Severance was subsequently convicted as charged and sentenced to a term of five years to life. Severance appeals arguing (1) the trial court erred in refusing to suppress evidence from the showup because the officer's comments were unconstitutionally suggestive, and (2) he was unconstitutionally denied effective assistance of counsel.

## ADMISSIBILITY OF EVIDENCE

Severance argues the court erred in refusing to suppress the showup identification evidence. He claims the remarks made to Hurley and Monson by Officer Gray were unconstitutionally suggestive under both the state and federal constitutions and thus the identification was not reliable.

■ On appeal, Severance asserts the showup identification violated his state constitutional right to due process. However, he failed to raise this issue at the trial level, and on appeal, he has provided no analysis based on state constitutional provisions. Because he has failed either to preserve the issue in the trial court or to analyze it on appeal, we decline to apply a state constitutional analysis to the issue of admissibility of the showup identification. *State v. Lafferty,* 749 P.2d 1239, 1247 & n. 5 (Utah 1988); *State v. Boone,* 820 P.2d 930, 932 n. 2 (Utah App.1991).

■ We next consider whether the showup identification was so suggestive as to deny Severance's due process rights under the federal constitution. Whether a showup identification is "so unnecessarily suggestive and conducive to irreparable mistaken identification" is determined by examining the totality of the circumstances. *Neil v. Biggers,* 409 U.S. 188, 196, 93 S.Ct. 375, 380, 34 L.Ed.2d 401 (1972).

While a lineup identification is preferable over a showup identification, a showup

identification is nonetheless admissible so long as it is deemed reliable under a totality of the circumstances analysis. *Biggers*, 409 U.S. at 199, 93 S.Ct. at 382; *State v. Poteet*, 692 P.2d 760, 763 (Utah 1984). We thus confine our analysis to whether the showup identification was reliable.

■ Show up identifications "do not deny the accused due process of law unless, under a totality of the circumstances, they are so unnecessarily suggestive and conducive to irreparable mistaken identification as to deny the accused a fair trial." *State v. McCumber*, 622 P.2d 353, 357 (Utah 1980) (citing *Stovall v. Denno*, 388 U.S. 293, 298, 87 S.Ct. 1967, 1970–71, 18 L.Ed.2d 1199 (1967)). *Accord Poteet*, 692 P.2d at 763. In other words, even though an identification procedure may have been suggestive, it is nevertheless admissible unless there is a substantial likelihood of misidentification. *Biggers*, 409 U.S. at 198, 93 S.Ct. at 381–82; *Manson v. Brathwaite*, 432 U.S. 98, 106, 97 S.Ct. 2243, 2249, 53 L.Ed.2d 140 (1977).

In arguing that the showup was not reliable, Severance does not challenge other factors such as

the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal,[1] the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Biggers*, 409 U.S. at 199, 93 S.Ct. at 382. Even though Severance does not challenge the above factors, under a totality of circumstances analysis, the factors are nonetheless relevant in determining whether the showup identification was reliable.

Both Hurley and Monson had an opportunity to view Severance during or shortly after the crime and, knowing he had committed a crime, they paid attention as they looked at him. Hurley observed Severance several times from distances of approximately five to ten feet during the five to ten minutes Severance was in the store. She estimated she looked directly at him for thirty seconds while he was two feet away from the front counter. During the robbery itself, she looked directly at Severance for thirty more seconds. She gave a detailed description of their short conversation, of his knife, and of his appearance. She followed him outside and noted where he was going. She also had the presence of mind to enlist Monson's help.

Monson likewise had an opportunity to view Severance as he followed him. Monson saw Severance get into a car which he accurately described as an older model green Chrysler. Monson also had time to note that the license plates on Severance's car were blue and yellow, dirty, and out of state. Monson had further opportunity to view Severance as he left the shopping center driving west.

After the police arrived at the video store, Hurley and Monson each had an opportunity to give a description of Severance. Hurley's description was detailed, as was Monson's. Hurley described Severance's age, height, build, weight, jaw line, whiskers, the cleft in his chin, hair color, and the fact his hair was thinning, and the fact his sideburns reached the bottom of his ears. She also described his hands and fingernails as being dirty and she described his clothing.

Monson likewise described Severance's height, weight, and clothing. In addition, he described Severance's car and later positively identified it.

Monson could say only that Severance was of the "same general height and

---

1. Severance argues that Hurley's "descriptions of the suspect and that of the defendant differ significantly in that she describes the robbery suspect as wearing sideburns whereas the defendant had no sideburns at the time he was taken into custody by Officer Flowers." We do not find this difference significant in light of Hurley's opportunity to view Severance before and immediately after the robbery, the degree of attention paid, the detail with which she described the robber, the level of certainty demonstrated at the confrontation, and the short length of time between the crime and the confrontation. *See Biggers*, 409 U.S. at 199, 93 S.Ct. at 382. This is especially so in light of the officer's testimony that part of defendant's face appeared to have been recently shaved.

weight" as the robber. Hurley, on the other hand, demonstrated a high degree of certainty as she positively identified Severance at the showup, which occurred approximately one and a half hours after the robbery. As a matter of fact, except for a few minutes, Severance, after the robbery, was continually under the surveillance of Hurley, Monson or the police officers. Therefore, we see no legal error in the court's conclusions that the showup identification was reliable and should therefore be admitted.

## EFFECTIVE ASSISTANCE OF COUNSEL

■ Severance claims he was denied effective assistance of counsel because his counsel failed to subpoena either the manager or the desk clerk from the Spinning Wheel Motel in Fillmore, Utah, who might possibly have testified that Severance had no sideburns the morning of August 12, 1986, two days prior to his arrest.

We review a challenge of ineffective assistance of counsel by first determining whether counsel's performance was deficient and, if so, whether the deficient performance prejudiced defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *State v. Carter*, 776 P.2d 886, 893 (Utah 1989); *State v. Frame*, 723 P.2d 401, 405 (Utah 1986); *State v. Oliver*, 820 P.2d 474, 478 (Utah App.1991).

A defendant "must prove that specific, identified acts or omissions fall outside the wide range of professionally competent assistance. The claim may not be speculative, but must be a demonstrative reality." *Frame*, 723 P.2d at 405. A defendant must then show that the deficient performance was so prejudicial as to "undermine confidence in the reliability of the verdict." *Id. Accord, Oliver*, 820 P.2d at 478. That is, a

defendant must demonstrate there was a reasonable probability of a different result at trial. *State v. Templin*, 805 P.2d 182, 188 n. 26 (Utah 1990).

Notwithstanding Severance's acknowledged mistake concerning the name of the motel, he argues that defense counsel "should have pursued more vigorously the name of the motel and the names of the managers of the motel." [2]

The record does not indicate whether either the manager or the desk clerk of the Spinning Wheel Motel would have testified favorably concerning Severance's appearance had they been called at trial. Further, in light of the overwhelming evidence against him, including the short time between the showup and the robbery, the two eyewitness identifications, and the evidence suggesting that he appeared to have shaved after the robbery and before his apprehension one hour later, any testimony as to his not having sideburns two days before the robbery would not have led to a more favorable result. Thus, Severance has failed to show how counsel's failure to locate potential witnesses in Fillmore created a reasonable probability of a different result at trial.

Finding no error in the court's admission of the showup identification evidence, and finding that Severance was not denied effective assistance of counsel, we affirm the conviction.

JACKSON and ORME, JJ., concur.

2. Severance claims that page sixteen of the police report was missing from the copy given his counsel. He claims that this page reveals that police recovered a motel receipt from the Spinning Wheel Motel in Fillmore, Utah showing that Severance spent the night of August 10, 1986 at the motel, and that police officers spoke with the managers to verify that fact. We decline to address this argument as the police report has not been made part of the record on appeal.