**STATE of Utah, Plaintiff and Appellee,**

v.

**John BURK, Defendant and Appellant.**

**No. 910404–CA.**

Court of Appeals of Utah.

Oct. 23, 1992.

Ronald J. Yengich (argued), Yengich, Rich & Xaiz, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, State Atty. Gen., Marian Decker (argued), Asst. Atty. Gen., Salt Lake City, for plaintiff and appellee.

Before BENCH, ORME and RUSSON, JJ.

## OPINION

RUSSON, Judge:

Defendant John Burk appeals his convictions of arson, a third degree felony, in violation of Utah Code Ann. § 76–6–102 (1990), and of tampering with a witness, a third degree felony, in violation of Utah Code Ann. § 76–8–508 (1990). We affirm.

## FACTS

On appeal, we recite the facts in the light most favorable to the jury's verdict. *State v. Johnson*, 821 P.2d 1150, 1153 (Utah 1991).

On the night of August 9, 1989, Burk asked Ivan Phipps to accompany him to Jennifer Powers's home to help him burn her car. In order to avoid recognition, Phipps borrowed a friend's Jeep, picked up Burk, and drove to Powers's home, where Burk then set fire to Powers's car.

Phipps was subsequently turned into the police by the Jeep's owner, and charged with arson. Prior to Burk being charged, Phipps told Burk that while he knew that he had done something wrong, he did not feel that what he was being charged with was fair. In response, Burk told Phipps to "[j]ust stick it out," while he tried to "figure out ways to have good excuses or anything like that." Burk further asked Phipps to testify that he "hadn't done it" and "knew nothing about it." Phipps also testified that on several different occasions, Burk and he had discussed possible alibis. In July 1990, Phipps entered into a diversion agreement with the State, whereby all charges against him would be dropped in exchange for his testimony and on the condition that he demonstrate good behavior for a year. Burk was subsequently charged with arson and tampering with a witness.

Burk was tried by a jury on April 10, 1991. During the course of that trial, a prosecution witness, Gina Wood, testified that she knew that Burk had "done this." Defense counsel objected to the testimony, which objection was sustained. The court also, sua sponte, ordered Wood's statement stricken from the record. Wood further testified that Burk's sister-in-law had told her that Burk "was going to cut her up." Again, defense counsel objected, and requested that the jury be excused. After the jury had been excused, Burk's counsel moved for a mistrial on the grounds that Wood's testimony was prejudicial and could not be cured by an appropriate instruction from the bench. The trial court denied Burk's motion, but instructed the jury to disregard Wood's statements. At the conclusion of the one-day trial, Burk was convicted as charged.

Subsequently, Burk moved for an arrest of judgment on the grounds that (1) the facts proved at trial did not constitute a public offense; (2) Wood had testified to matters that were inadmissible under Rule 404(b) of the Utah Rules of Evidence, which error was not cured by the trial court's cautionary instruction; (3) there was improper contact between witnesses and jurors; and (4) witnesses were improperly informed about other witnesses' testimony. Following a hearing on the issue of improper contact between witnesses and jurors, the trial court found that if any contact had taken place, it was incidental, and ruled that the evidence was insufficient to justify a motion to arrest judgment. Nonetheless, the trial court on its own initiative decided to question the jurors under oath as to whether they had overheard any conversations between witnesses. The trial court instructed both counsel to be present, but ordered that Burk would be excluded. Burk filed a memorandum challenging that order.

The trial court conducted two hearings during which the court questioned each of the jurors concerning Burk's allegation of improper contact between witnesses and jurors and determined that there had been no improper contact. At the conclusion of these hearings, the trial court overruled Burk's objection to the proceedings and denied Burk's motion to arrest judgment.

Burk appeals his convictions and the denial of his motion to arrest judgment, raising the following issues: (1) Did the trial court err in refusing to grant Burk a mistrial on the ground that Wood's testimony was prejudicial and not cured by the trial court's instruction to the jury to disregard that testimony?; (2) Was the evidence adduced at trial sufficient to support Burk's conviction of tampering with a witness?; (3) Was there improper contact between witnesses and jurors as to deny Burk due process of law?; and (4) Did the trial court err in refusing to allow Burk to be present at a post-trial hearing at which the jurors

were questioned concerning improper contact?

## I. MOTION FOR MISTRIAL

■ Burk argues that the trial court erred in denying his motion for a mistrial based on Wood's hearsay and inflammatory testimony. "We will uphold the trial court's denial of defendant's motion for a new trial unless we determine the court has abused its discretion." *State v. Boone*, 820 P.2d 930, 932 (Utah App.1991) (citing *State v. Knight*, 734 P.2d 913, 918–19, 923 (Utah 1987); *Anton v. Thomas*, 806 P.2d 744, 747 (Utah App.1991)). Burk claims that Wood's testimony that she knew Burk had "done it," and her hearsay testimony that Burk was going to "cut her up" were so prejudicial as to deny Burk a fair trial in contravention of the Fifth and Fourteenth Amendments to the United States Constitution and article I, section 7 of the Utah Constitution.[1] We disagree.

■ Evidence is unfairly prejudicial:
if it has a tendency to influence the outcome of the trial by improper means, or if it appeals to the jury's sympathies, or arouses its sense of horror, provokes its instinct to punish or otherwise causes a jury to base its decision on something other than the established propositions of the case.

*Terry v. Zions Coop. Mercantile Inst.*, 605 P.2d 314, 323 n. 31 (Utah 1979) (citation omitted), *overruled on other grounds*, *McFarland v. Skaggs Cos., Inc.*, 678 P.2d 298 (Utah 1984).

We turn first to Wood's testimony that she knew Burk was responsible for the arson. While such testimony may have been conjectural and without foundation, Burk does not demonstrate that the testimony was so prejudicial as to justify a mistrial, particularly since the court sustained defense counsel's objection to that testimony, and the court, sua sponte, ordered Wood's statement stricken from the record. In light of this, we conclude that such testimony did not unduly prejudice Burk so as to deny him a fair trial.

Burk likewise fails to demonstrate that Wood's testimony that she had been told that Burk was going to "cut her up" was so prejudicial as to deny Burk a fair trial. Following Wood's statement, defense counsel, outside the presence of the jury, moved for a mistrial based on that testimony, as well as Wood's prior testimony that Burk had "done it." In overruling the motion, the court stated:

> First of all the court will find that this is not the first testimony that has come in relative to threats that the defendant has made against several of the witnesses. Ms. Powers testified that the defendant indicated that if she did not drop the telephone harassment charges against him, that she was a dead girl. No objection was made to that comment.

> The court would further find that under these circumstances it is not so prejudicial as to be the basis of a mistrial in this matter[.]

After denying Burk's motion and recalling the jury, the court instructed the jury that "the court has ordered stricken any testimony of [Wood] relative to what some third person may have said about what the defendant may or may not do to her and you are not to consider that in any manner in your decision in this particular case." At the close of trial, in its instructions to the jury, the court again admonished the jurors that "[a]ny evidence as to which an objection was sustained by the [court], and any evidence ordered stricken by the [c]ourt must be entirely disregarded."

"In the absence of the appearance of something persuasive to the contrary, we assume that the jurors were conscientious in performing to their duty, and that they followed the instructions of the court." *State v. Hodges*, 30 Utah 2d 367, 517 P.2d 1322, 1324 (1974). In the case at bar, Burk contends that the cautionary instruction did not purge the prejudicial effect of the

---

1. However, because Burk provides no independent state constitutional analysis, but only nominally refers to state constitutional provisions, we decline to reach his challenge under the state constitution. *State v. Severance*, 828 P.2d 1066, 1068 (Utah App.1992); *Boone*, 820 P.2d at 932 n. 2.

statement, but offers nothing which convinces us that the jury did not follow the court's instruction to disregard Wood's testimony. Therefore, we assume that the cautionary instruction was sufficient to remedy any prejudicial effect of such testimony.

Moreover, Burk does not explain how Wood's hearsay testimony that he was going "to cut her up" could possibly be so prejudicial as to warrant a mistrial in light of the fact that the substance of that testimony was admitted without any objection by defense counsel. Specifically, Wood testified:

Q. [By Prosecution] Now, Ms. [Wood], we would like to ask you, as the Court has indicated, was there ever a time when you had a direct discussion with [defendant], were there any threats made directly to you by [defendant]?
A. [By Wood] Yes.
Q. Do you know approximately when that was?
A. In July, I would say.
Q. Of '89?
A. Yeah.
Q. Who was present at that time?
A. Linda Burk.
Q. Where were you located at?
A. I was sitting in Linda Burk's kitchen.
Q. Was [defendant] present?
A. Yes. He had brought his children back from visitation.
Q. What occurred on that occasion only as to what you said to [defendant] or [defendant] said to you?
A. I said to [defendant] that I heard you were going to cut me up into little pieces and scatter me all over Utah. [Defendant] replied to me that yes, that was very possible.

Because evidence of Burk's threat toward Wood was ultimately admitted without objection that the testimony was unduly prejudicial, we conclude that Wood's pri-

or hearsay testimony to the same effect was not so prejudicial as to deny Burk a fair trial. Thus, for the foregoing reasons, the trial court did not abuse its discretion in denying Burk's motion for a mistrial based on Wood's testimony.

## II. WITNESS TAMPERING

■ Burk next argues that the evidence at trial was insufficient to support his conviction of tampering with a witness, in violation of Utah Code Ann. § 76–8–508(1)(b) (1990).[2] The standard of review as to the sufficiency of evidence in a jury trial is well settled:

[T]he evidence and the reasonable inferences which might be drawn therefrom must be viewed in the light most favorable to the jury verdict. A jury conviction is reversed for insufficient evidence only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted.

State v. Salas, 820 P.2d 1386, 1387 (Utah App.1991) (quoting State v. Johnson, 774 P.2d 1141, 1147 (Utah 1989)); accord State v. Jonas, 793 P.2d 902, 905 (Utah App.), cert. denied 804 P.2d 1232 (Utah 1990); State v. Jamison, 767 P.2d 134, 137 (Utah App.1989).

Burk argues that Phipps's testimony was insufficient to prove that Burk, believing that an official proceeding or investigation was pending or was about to be instituted, attempted to induce or otherwise cause Phipps to withhold any testimony, information, document, or item. See Utah Code Ann. § 76–8–508(1)(b) (1990). We disagree.

Phipps testified as follows:
Q. [By Prosecution] Was there ever a time when you discussed your pending criminal case?
A. [By Phipps] Yes.

---

**2.** Utah Code Ann. § 76–8–508(1)(b) (1990) states:

　　(1) A person is guilty of a third degree felony if, believing that an official proceeding or investigation is pending or about to be

instituted, he attempts to induce or otherwise cause a person to:

　　.　　.　　.　　.　　.

　　(b) withhold any testimony, information, document, [or] item[.]

Q. Did you talk to Mr. Burk about that?

A. Yes, I did.

Q. Do you recall about how many times you would have talked to him?

A. Quite a few.

Q. What was the nature of those conversations?

A. Basically I was scared, didn't want to get into trouble. I knew I did something wrong, but I didn't feel that what I was being charged with was fair.

Q. What was Mr. Burk's response?

A. Just to stick it out, trying to figure out ways to—I want to say get away with it, but figure out ways to have good excuses or anything like that.

Q. Did he ever indicate to you anything about alibis or anything of that nature?

A. Yes.

Q. What did he indicate to you about that?

A. There were several different times when we had discussed possible alibis where I or he could have been at the time.

Q. Did he ever offer to testify in your behalf?

A. Yes, he did.

Q. Did he ever want you to testify in any particular way?

A. Yes.

Q. What was that?

A. Just that I hadn't done it, that I knew nothing about it.

Viewed in the light most favorable to the jury's verdict, Phipps's testimony supports the jury's determination that Burk attempted to induce or otherwise cause him to withhold testimony or information concerning the truth of the events that transpired on the night of August 9, 1989. That testimony demonstrates that Burk asked Phipps to testify that Phipps had not committed the crime, and that he knew nothing about it. By doing so, Burk not only attempted to induce or otherwise cause Phipps to testify falsely,[3] but also attempted to induce or otherwise cause him to withhold critical testimony about the crime. Thus, we cannot say that his testimony was so inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that Burk tampered with a witness. Accordingly, we affirm that conviction.

## III. IMPROPER CONTACT BETWEEN WITNESSES AND JURORS

Burk claims that the trial court erred in denying his motion to arrest judgment and order a new trial based on improper contact between jurors and certain state witnesses during the course of the trial. He argues that such contact was so prejudicial as to deny him the right to an impartial jury of his peers as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and article I, sections 10 and 12 of the Utah Constitution.[4]

 We will disturb a trial court's factual findings underlying its decision to deny a motion for a new trial only if the findings are clearly erroneous. Utah R.Civ.P. 52(a). A finding is clearly erroneous when, inter alia, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *State v. Walker*, 743 P.2d 191, 193 (Utah 1987) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). As to the decision of whether to grant a new trial, "a trial court has some discretion, and we reverse only for abuse of that discretion." *Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 799 (Utah 1991).

 Burk first contends that the trial court's findings of fact on the issue of improper juror/witness contact are not sufficiently detailed and therefore do not warrant deference on appeal. Such argument is without merit.

"[T]he ultimate test of the adequacy of a trial judge's findings is whether they are

---

3. *See* Utah Code Ann. § 76–8–508(1)(a) (1990).

4. Again, Burk provides no independent state constitutional analysis, thus we decline to reach his challenge under the state constitution. *See* note 1.

sufficiently comprehensive and pertinent to the issues to provide a basis for decision." *State v. Hurst*, 821 P.2d 467, 471 (Utah App.1991) (quoting 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2579 (1971)). In the case at bar, the issue before the trial court was whether there was improper contact between jurors and witnesses that would support the court's decision to arrest judgment. In concluding that there was not, the court found:

> 4. On its own motion, the court, in the presence of counsel for the State and for the defendant, interviewed each juror under oath to determine whether there was, in fact, improper contact by the jurors with any of the witnesses or parties and if so whether the contact prejudiced the defendant.
>
> 5. The jurors each indicated that they had no conversations with any witnesses or parties, that they had not overheard any conversations and had no contacts whatsoever with them.

Accordingly, the trial court's findings were sufficient to support the court's decision to deny Burk's motion to arrest judgment based on improper contact between jurors and witnesses.

 Alternatively, Burk argues that the findings are in conflict with the clear weight of the evidence. *See State v. Hargraves*, 806 P.2d 228, 231 (Utah App.1991). "An appellant raising issues of fact on appeal must, under Utah R.Civ.P. 52(a), marshal all the evidence supporting the trial court's findings, and then show that evidence to be insufficient." *State v. Drobel*, 815 P.2d 724, 734–35 (Utah App.) (citations omitted), *cert. denied*, 836 P.2d 1383 (Utah 1991).

In the case at bar, Burk does not marshal the evidence supporting the court's findings in order to demonstrate that such evidence does not support the findings; rather, he cites the only evidence before the trial court of improper contact, the testimony of Michael Burk, the defendant's son, and contends that, based on certain case law, the trial court's findings of no improper contact and no prejudice are against the weight of the evidence and therefore are clearly erroneous.[5] Because Burk has not demonstrated that the evidence was insufficient to support the trial court's findings, we assume that the findings were supported by the evidence. Therefore, the trial court did not abuse its discretion in denying Burk's motion to arrest judgment and order a new trial based on improper contact between jurors and certain state witnesses.

## IV. PRESENCE AT POST–VERDICT PROCEEDING

 Lastly, Burk claims that the trial court erred in ruling that he did not have a right to be present at the post-verdict proceeding to determine whether there was improper contact between jurors and trial witnesses. Whether a defendant has a right to be present at a post-verdict proceeding is a conclusion of law which we review for correctness. *See State v. Ramirez*, 817 P.2d 774, 782 (Utah 1991).

Burk argues that the court, in excluding him from that proceeding violated his right to be present at all stages of a criminal trial under the Sixth Amendment to the United States Constitution and article 1, section 12 of the Utah Constitution,[6] citing *State v. Houtz*, 714 P.2d 677 (Utah 1986). In that case, the Utah Supreme Court held that "[a] defendant charged with a crime is entitled to be present at all stages of trial." *Id.* at 678 (citations omitted). However, in the present case, the trial court specifically found the post-verdict proceeding in this case to be an

> extraordinary hearing ... called solely to examine the jurors, had nothing to do with the credibility of the jurors or their selection, and therefore [the court] feels since it's extraordinary in the sense it is not traditionally a part of the trial proce-

---

**5.** As to Michael Burk's testimony, the trial court considered it to be of "obvious concern," and also found that such familial interest "weighs against the credibility of his testimony."

**6.** Again, Burk has provided no independent state constitutional analysis; therefore we decline to reach his challenge under the state constitution. *See* note 1.

dure, that the procedure followed by the court in this matter is appropriate and will deny your motion in that regard.

"The constitutional right to presence is rooted to a large extent in the Confrontation Clause of the Sixth Amendment, but [the U.S. Supreme Court has] recognized that this right is protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him." *United States v. Gagnon,* 470 U.S. 522, 526, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985) (citation omitted).

The Supreme Court, in *Snyder v. Massachusetts,* 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934), set out the standard for when a defendant has a right to presence under the due process clause. "[I]n a prosecution of a felony the defendant has the privilege under the Fourteenth Amendment to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Id.,* 291 U.S. at 105–06, 54 S.Ct. at 332. "[T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, *and to that extent only.*" *Id.,* 291 U.S. at 107–08, 54 S.Ct. at 333 (emphasis added).

In *Gagnon,* the Supreme Court, in applying the standard set forth in *Snyder,* determined that there was no due process violation when the trial court conducted an *in camera* discussion with a juror concerning the juror's prejudice toward one of the defendants outside the presence of the defendants. The Court stated:

In this case the presence of the four respondents and their four trial counsel at the *in camera* discussion was not required to ensure fundamental fairness or a "reasonably substantial ... opportunity to defend against the charge." The encounter between the judge, the juror, and Gagnon's lawyer was a short interlude in a complex trial; the conference was not the sort of event which every defendant had a right personally to attend under the Fifth Amendment. Re-

spondents could have done nothing had they been at the conference, nor would they have gained anything by attending. *Gagnon,* 470 U.S. at 527, 105 S.Ct. at 1484–85 (quoting *Snyder,* 291 U.S. at 105–06, 54 S.Ct. at 332).

In *United States v. Brown,* 923 F.2d 109 (8th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 110, 116 L.Ed.2d 80 (1991), the defendants contended that the district court violated their constitutional right by not allowing them to be present at the *in camera* interrogation of each juror to determine whether there had been impermissible contact between a juror and spectators. The Eighth Circuit held that the defendants' claim was foreclosed by the Supreme Court's holding in *Gagnon* because the presence of the defendants at the *in camera* discussion "was not required to ensure fundamental fairness or a 'reasonable substantial ... opportunity to defend against the charge.'" *Id.* at 112 (quoting *Gagnon,* 470 U.S. at 527, 105 S.Ct. at 1484 (citation omitted)).

Further, in *United States v. Aiello,* 771 F.2d 621 (2d Cir.1985), the Second Circuit stated that "it was within the district judge's discretion to conclude that the potential chilling effect on the openness and candor of the jurors' responses to questions about their reactions to the third party communications justified his excluding the defendants from the *voir dire* part of the hearing." *Id.* at 630 (citations omitted).

Other courts have specifically held that a defendant's right to presence is not violated by exclusion from post-verdict proceedings. In *Polizzi v. United States,* 550 F.2d 1133 (9th Cir.1976), the Ninth Circuit held that the defendant's rights to a public trial and to due process were not infringed by the judge's questioning of the jurors about possible prejudice after the verdict. The Kansas Supreme Court, in *State v. Dunn,* 243 Kan. 414, 758 P.2d 718 (1988), held that "the presence of the defendant at a hearing on post-trial motions is not a matter of right, but a matter within the discretion of the trial court." *Id.,* 758 P.2d at 734. In *Commonwealth v. Dupont,* 2 Mass.App. 566, 317 N.E.2d 83 (1974), the defendants

objected to a post-trial examination of two court officers concerning possible juror prejudice. The court determined that the post-verdict examination "was undertaken after the trial had ended; and was not part of the regular trial proceedings [as to violate the defendants' constitutional right to presence]." *Id.,* 317 N.E.2d at 88. The Montana Supreme Court has also held that it is not required that "appellant be present at a hearing on a motion for a new trial because such a hearing is held after the verdict has been rendered and is not part of the trial." *State v. Peters,* 146 Mont. 188, 405 P.2d 642, 647 (1965).

Applying the foregoing authority to the facts of this case, we conclude that the trial court did not abuse its discretion in excluding Burk from the post-verdict proceedings to determine whether there was improper contact between witnesses and jurors. As found by the trial court, the hearing was an "extraordinary proceeding" to insure that there had been no improper contact, and occurred only after a previous hearing on the same issue at which the defendant was present and wherein the court concluded that "the evidence [was] not sufficient based solely upon what the Court has heard ... to justify a motion to arrest judgment [based on improper contact]."

Given the extraordinary nature of the post-verdict proceedings in the case at bar, Burk's presence was not required to ensure fundamental fairness or a "reasonably substantial ... opportunity to defend against the charge." *Snyder,* 291 U.S. at 105–06, 54 S.Ct. at 332. The proceedings involved a one-on-one exchange between the court and each individual juror, wherein the court simply inquired "whether or not during the course of the trial, [the juror] overheard any conversations or talk about the defendant, John Burk." While counsel was allowed to be present at the proceedings, they were not permitted to ask questions of the jurors. Burk, therefore, could have contributed nothing had he been at the proceedings, nor would he have gained anything by attending. Thus, Burk's constitutional right to presence was not violated, and the court did not err in excluding him from those proceedings.

## CONCLUSION

Based on the foregoing, we conclude that: (1) the trial court did not err in denying Burk's motion for a mistrial based on inflammatory and hearsay testimony; (2) the evidence adduced at trial was sufficient to support Burk's conviction of tampering with a witness in violation of Utah Code Ann. § 76–8–508(1)(b) (1990); (3) there was sufficient evidence to support the trial court's findings regarding improper contact between jurors and witnesses; and (4) the trial court did not err in excluding Burk from post-verdict proceedings to determine whether there had been improper contact between jurors and witnesses. Thus, Burk's convictions and the denial of Burk's motion to arrest judgment are affirmed.

BENCH, J., concurs.

ORME, Judge (dissenting in part):

While I otherwise concur in the court's opinion, I must dissent from the court's affirmance of the witness tampering charge addressed in Section II of the main opinion. The basis for my disagreement is simple. Phipps's testimony about his pre-trial discussions with Burk does not establish either that Burk "attempt[ed] to induce" Phipps to withhold testimony or that he "attempt[ed] to ... otherwise cause" Phipps to withhold testimony.

Careful review of Phipps's testimony indicates that Burk *wanted* Phipps to stick it out while they figured out "good excuses or anything like that;" that the two merely *discussed* "possible alibis" concerning where Phipps or Burk "could have been"; and that Burk *wanted* Phipps to testify that he, Phipps, had not committed the crime and knew nothing of the crime. The majority takes comfort in the last of these, but is able to do so only by drawing its own conclusion about what Phipps was really saying, on the basis of facts not in evidence. Phipps's testimony was that Burk *wanted* him to testify a particular way. The majority deduces from this testimony that Burk *asked* him to testify a particular way. I do not believe the deduction fol-

lows. The mere fact that one wants a particular thing, and has made that desire known to another, does not necessarily mean he has asked the other to bring it about.

The most that can be said of Burk's discussions with Phipps is that Burk registered with Phipps a personal preference that Phipps withhold testimony damaging to Burk. This mere desire, however, where not coupled with some tangible indicia of inducement or causation, is not criminal. If Burk threatened Phipps with harm unless he withheld testimony; if Burk promised Phipps some benefit if he withheld testimony; or perhaps even if Burk set about, only with argument and persuasion, to dissuade Phipps from testifying, Burk's actions would constitute criminal tampering. But according to Phipps, Burk did none of that. He merely acquainted Phipps with his wish, desire, or preference that Phipps stick it out and that Phipps testify he knew nothing. Additionally, the two shared their thoughts on *possible* alibis. Burk would no doubt have been perfectly pleased had Phipps elected to withhold testimony incriminating to Burk. But from all that appears, Burk in no way attempted to *cause*, by inducement or otherwise, that result.

Accordingly, I would reverse the witness tampering conviction, which lacks any basis whatsoever in the evidence.