[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 643 
The appellant, Charles Lee Burton, was convicted of murder made capital because it was committed during the course of a robbery in the first degree. § 13A-5-40(a)(2), Code of Alabama 1975. The jury unanimously voted for the death penalty. The trial court accepted the jury's recommendation and sentenced the appellant to death by electrocution.
The state's evidence tended to show that on August 16, 1991, six men — the appellant, Derrick DeBruce,[1] Deon Long, LuJuan *Page 644 
McCants, Willie Brantley, and Andre Jones — robbed the occupants of the Auto Zone automobile parts store in Talladega, Alabama. During the course of the robbery, a customer, Doug Battle, was shot. He died as a result of a gunshot wound to the lower back, which pierced his chest. The trigger man was Derrick DeBruce.
The manager of the store, Larry McCardle, was at the cash register when an individual he identified as the appellant entered the store, purchased some items, and asked him for the location of the restroom. McCardle testified that at this time another customer, whom he identified as DeBruce, was in the store. After the appellant started walking to the restroom, DeBruce pulled a gun and told everyone in the store to get on the floor. At this point, the appellant grabbed McCardle, pointed a gun at him and told him to take him to the safe. McCardle complied. Moments later McCardle heard yelling and gunshots.
One of the appellant's codefendant's, LuJuan McCants, testified that the six men involved in the robbery were at Barbara Spencer's[2] house in Montgomery on April 16 talking about committing a robbery. He said that Deon Long, Charles Burton, and Derrick DeBruce left the Spencer house to get some guns. They agreed to meet at the appellant's house. They left the appellant's house in two cars and headed toward Birmingham. They exited the interstate at Sylacauga and proceeded to Talladega. In Talladega, they went to a carwash and discussed robbing the Auto Zone store. They left one car at the carwash and they all proceeded in the other car to the Auto Zone.
McCants testified that the appellant organized the criminal activity and that he told the others what to do during the robbery. The appellant told McCants and Long to watch the door and told them that if he left the store that they should forget the robbery plans. McCants testified that the appellant also told them that if anyone caused any trouble in the store to let him handle the situation. McCants also testified that everyone who went into the store had a gun except Deon Long. McCants said that they forced everyone in the store to get on the floor and that they then took their valuables. The victim, Battle, walked in while the robbery was in progress and McCants told him to get on the floor. Battle was having some difficulty getting on the floor and an argument ensued between DeBruce and Battle. DeBruce hit Battle and he fell to the ground. DeBruce then shot Battle in the back while he was lying face-down on the floor. McCants testified that all of the robbers had either left the store or were about to leave when DeBruce shot Battle. He said that the appellant was among those who had already left the store at the time of the shooting. After all six left the store, they jumped in their car, picked up the other car at the carwash where they had left it, went to Barbara Spencer's house and divided the money.
A forensic examination of the Auto Zone store revealed 17 of the appellant's fingerprints. These prints were found on the items that McCardle had said that the appellant purchased before the robbery and on various other items in the store.
Barbara Spencer testified that before the robbery, the six men had been at her house discussing how to commit a robbery. She said that they left her house in separate cars and that the appellant and Derrick DeBruce were riding together. She testified that they returned to her house later and appeared to be upset. They had a large amount of money and the appellant was telling the others how to divide it. Spencer said that they gave her $100 but that she gave the money to McCants.
The appellant raises many issues on appeal. A majority of the issues raised by the appellant were not brought to the attention of the trial court. However, because this case involves the death penalty, this court is obliged, under Rule 45A, A.R.App.P., to search the record for plain error.
 "In all cases in which the death penalty has been imposed, the court of criminal appeals shall notice any plain error or defect in the proceedings under review, whether or not brought to the attention of *Page 645 
the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial right of the appellant."
Rule 45A, A.R.App.P. "[T]he plain-error exception to the contemporaneous-objection rule is to be 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.' " United States v. Young, 470 U.S. 1, 15,105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985), quoting United States v.Frady, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816
(1982).
 I
The appellant initially argues that the trial court erred in denying his motion for a change of venue. He contends that because of the extensive pretrial publicity he was unable to obtain a fair trial in Talladega County.
"In order to meet the burden of showing the necessity for a change of venue due to pretrial publicity on the grounds of community saturation, the appellant must show more than the fact 'that a case generates even widespread publicity.' "Oryang v. State, 642 So.2d 979, 983 (Ala.Cr.App. 1993).
 "Newspaper articles alone would not necessitate a change in venue unless it was shown that the articles so affected the general citizenry through the insertion of such sensational, accusational or denunciatory statements, that a fair and impartial trial was impossible. Patten v. State, 246 Ala. 639, 21 So.2d 844 [1945]."
Thompson v. State, 581 So.2d 1216, 1233 (Ala.Cr.App. 1991), cert. denied, 502 U.S. 1030, 112 S.Ct. 868, 116 L.Ed.2d 774
(1992).
This court has stated that "the appropriate method to establish the existence of adverse publicity or actual prejudice is through voir dire examination of potential jurors." Hart v. State, 612 So.2d 520, 527 (Ala.Cr.App.), aff'd, 612 So.2d 536 (Ala. 1992), cert. denied, ___ U.S. ___,113 S.Ct. 2450, 124 L.Ed.2d 666 (1993).
In this case the court questioned the prospective jurors in groups of 15.[3] At least one-half of the members of each group were at least aware of the facts surrounding the robbery and murder. Each veniremember who had heard anything about the case was individually questioned. The majority of the prospective jurors could not cite any specifics concerning the murder. All but one said that what they had heard would not affect their ability to decide the case impartially upon the evidence presented at trial. The one prospective juror who did respond that she had been biased by what she had heard was excused for cause. The appellant has failed to show that the venire was so tainted that he was unable to obtain a fair trial.
The Supreme Court, in Irvin v. Dowd, 366 U.S. 717, 723,81 S.Ct. 1639, 1642-43, 6 L.Ed.2d 751 (1961), explained:
 "To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."
Jurors are not required to be "totally ignorant of the facts and issues involved." Murphy v. Florida, 421 U.S. 794, 799-800,95 S.Ct. 2031, 2035-2036, 44 L.Ed.2d 589 (1975).
 "[T]he determination of whether or not to grant a motion for a change of venue is generally left to the sound discretion of the trial judge, because he has the best opportunity to assess any prejudicial publicity against the defendant and any prejudicial feeling against the defendant in the community which would make it difficult for the defendant to receive a fair and impartial trial." *Page 646 
Nelson v. State, 440 So.2d 1130, 1132 (Ala.Cr.App. 1983). See also Trahan v. State, 450 So.2d 1102 (Ala.Cr.App. 1984). The trial court committed no error in denying appellant's motion for a change of venue.
 II
The appellant next contends that the trial court erred in holding a hearing on pre-trial motions in his absence. He contends that this action denied him his constitutional right to a fair trial. The appellant did not object to the court's holding of the hearing without him present. Thus we must determine whether plain error exists.
It appears from the record that motions on behalf of one of the appellant's co-defendant, DeBruce, were also argued at this pre-trial hearing. The motion hearing was brief and concerned certain evidentiary questions. Defense counsel discussed obtaining a videotape of an initial appearance hearing and requested an investigator, a pre-sentence expert, and information on the criminal backgrounds of McCants, Long, and Barbara Spencer. Defense counsel also asked the state if co-defendants McCants and Long had been offered life in prison in exchange for their testimony. No testimony was taken at this hearing. The hearing concerned only evidence that defense counsel wished to obtain from the state.
Judge Bowen addressed this very issue in his opinion affirming DeBruce's conviction and sentence. Judge Bowen stated:
 "In Harris v. State, [Ms. 3 Div. 332, June 12, 1992] [632] So.2d [503, 512] (Ala.Cr.App. 1992), this Court held that in a capital case, 'if the appellant's presence, in the present case, would have been useless to her defense and if the [pretrial] hearing was not considered to be a "critical stage" of her trial, then we can find no error in the appellant's absence from the hearing.' Here, as in Harris, '[t]he appellant has been unable to suggest or demonstrate any possibility of prejudice resulting from [his] absence.' Id.
 "Furthermore, although the case of Ex parte Stout, 547 So.2d 901 (Ala. 1989), was a noncapital case, we find it relevant to the extent that, if error were committed in this case, that error was harmless.
 " 'Violations of some constitutional rights may be considered harmless error. . . .
 " 'Moreover even improper exclusion of a defendant from a 'critical' portion of the trial does not automatically require reversal, if in the particular case the defendant's absence was harmless beyond a reasonable doubt.' "
 'Polizzi v. United States, 550 F.2d 1133, 1138
(9th Cir. 1976).'
 "Stout, 547 So.2d at 904. Although this Court is extremely reluctant to make a finding of harmless error in any case in which the death penalty has been imposed, here it is clear beyond any reasonable doubt that the appellant's absence at the pretrial hearing on various legal motions in no way prejudiced him. Here, as in Ex parte King, 564 So.2d 928, 931 (Ala. 1990), the 'hearing necessitated only arguments of law.' "
DeBruce v. State, 651 So.2d 599, 620 (Ala.Cr.App. 1993). For the reasons discussed in DeBruce, we find no plain error here. III
The appellant next argues that the trial court erred by failing to strike for cause two members of the jury venire based on their acquaintance with witnesses and people who were in the store when the robbery occurred. The appellant does not argue that either veniremember came within any ground for a challenge for cause contained in § 12-16-150, Code of Alabama 1975. Regarding this statutory grounds for challenge for cause, this court has said:
 "While these grounds are not exclusive, a nonstatutory ground should be a matter which indicates probable prejudice, Ex parte Cochran, 500 So.2d 1179 (Ala. 1985), or indicates that 'a prospective juror's opinion or bias is so fixed that he or she could not ignore it and try the case fairly and impartially according to the law and the evidence.' Ex parte Rutledge, 523 So.2d 1118, 1120
(Ala. 1988)."
Fisher v. State, 587 So.2d 1027, 1034 (Ala.Cr.App.), cert. denied, 587 So.2d 1039 (Ala. 1991), *Page 647 
cert. denied, 503 U.S. 941, 112 S.Ct. 1486, 117 L.Ed.2d 628
(1992).
During voir dire, prospective juror V.S. told the court that he had spoken with Larry McCardle about the robbery several days after it occurred. McCardle told V.S. "how it felt to have a gun held to his head." However, V.S. stated that his conversation with McCardle was "in a group" and that he and McCardle were "just acquaintances." V.S. further stated that he had not formed an opinion as to the guilt or innocence of the appellant and that he would not be influenced by what McCardle has told him.
Prospective juror C.B. stated to the court that Tim Calhoun, an employee who was working at Auto Zone on the day of the robbery, was a friend of her daughter's boyfriend. C.B.'s daughter and her daughter's boyfriend went to the emergency room with Calhoun the night of the robbery and subsequently stayed at home with him. C.B. further stated that she had not formed any opinion in the case and that she could judge the case from the facts presented from the witnesses and the evidence presented and not be influenced by anything she had previously heard.
 "To justify a challenge of a juror for cause there must be a statutory ground (Ala. Code Section 12-16-150 (1975)), or some matter which imports absolute bias or favor, and leaves nothing to the discretion of the trial court."
Nettles v. State, 435 So.2d 146, 149 (Ala.Cr.App.), aff'd,435 So.2d 151 (Ala. 1983).
Because there was no statutory ground for eliminating the two prospective jurors, an "absolute bias" must have existed.
 "Ultimately, the test to be applied is whether the juror can set aside her opinions and try the case fairly and impartially, according to the law and the evidence. Tidmore v. City of Birmingham, 356 So.2d 231 (Ala.Cr.App. 1977), cert. denied, 356 So.2d 234 (Ala.), cert. denied, 439 U.S. 836, 99 S.Ct. 120, 58 L.Ed.2d 132 (1978); see Willingham v. State, 262 Ala. 550, 80 So.2d 280 (1955); Mahan v. State, 508 So.2d 1180 (Ala.Cr.App. 1986). This determination again is to be based on the juror's answers and demeanor and is within the discretion of the trial judge. Thus, a prospective juror should not be disqualified for prejudices or biases if it appears from his or her answers and demeanor that the influence of those prejudices and biases can be eliminated and a verdict rendered according to the evidence."
Knop v. McCain, 561 So.2d 229, 232 (Ala. 1989); Mann v. State,581 So.2d 22, 25 (Ala.Cr.App. 1991).
The two prospective juror responses showed that they had no "absolute bias." The trial court committed no error in refusing to excuse these two prospective jurors for cause.
 IV
The appellant, who is black, also argues that the trial court erred in denying his Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), motion. The United States Supreme Court in Batson held that the Equal Protection Clause prohibits the removal of blacks from a black defendant's jury solely on the basis of their race. This ruling was later extended to white defendants in Powers v. Ohio, 499 U.S. 400,111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), and to civil litigants inEdmondson v. Leesville Concrete Co., Inc., 500 U.S. 614,111 S.Ct. 2077, 114 L.Ed.2d 660 (1991). The jury selection standards in Batson have also been applied to defense counsel.Georgia v. McCollum, ___ U.S. ___, 112 S.Ct. 2348,120 L.Ed.2d 33 (1992); Lemley v. State, 599 So.2d 64 (Ala.Cr.App. 1992). Recently the Alabama Supreme Court held that the protections of Batson apply to the striking of white prospective jurors. White Consolidated Industries, Inc. v.American Liberty Insurance Co., 617 So.2d 657 (Ala. 1993).
The party making the Batson objection must first establish a prima facie case of discrimination. Here, the prosecutor used 6 of his 14 peremptory strikes to remove 6 of the 12 blacks in the jury venire. After jury selection was complete, defense counsel made a Batson motion. The trial court, without specifically finding that the appellant had established a prima facie case of racial discrimination[4], *Page 648 
requested that the state give its reasons for striking black members of the jury venire.
 "Once the prosecution responds to a Batson motion and offers race-neutral explanations for its peremptory challenges, the issue of whether a prima facie showing of intentional discrimination was made by the appellant becomes moot. Hernandez v. New York, [500] U.S. [352], 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). This court has also concluded that where the trial court has made no express finding of a prima facie case of intentional discrimination, but the prosecution nonetheless explains its peremptory challenges, then such a finding will be implied and we will proceed directly to the evaluation of the prosecutor's explanations. Williams v. State, 548 So.2d 501
(Ala.Cr.App. 1988), cert. denied, 489 U.S. 1028, 109 S.Ct. 1159, 103 L.Ed.2d 218 (1989); Currin v. State, 535 So.2d 221 (Ala.Cr.App.), cert. denied, 535 So.2d 225 (Ala. 1988)."
Hart v. State, 612 So.2d at 523-24. Therefore, this court will not consider the question of whether defense counsel established a prima facie case of discrimination. We will proceed directly to review the reasons given by the prosecutor.Hart.
The prosecutor gave the following reasons for striking the black prospective jurors:
 1. Prospective juror 23 — She indicated during voir dire that she was opposed to the death penalty. She also answered on voir dire that her niece had been charged with writing bad checks.
 2. Prospective juror 38 — This juror had prior misdemeanor convictions. He also had three contempt attachments for child support. He also answered on voir dire that the district attorney had prosecuted one of his family members.
 3. Prospective juror 75 — She had served on two prior juries in the past. She answered during voir dire that she was related to someone who had a prior conviction. "What she didn't answer up to is that R.H. — and Sabrina Hall, who is a black female who is the victim service officer in my office, came up and told me that R.H. and K.H. are brothers. . . . We've prosecuted and convicted [K.H.] on a crack sale, and even after jury trial, which is almost unheard of, he was placed on probation. And then caught 2again with crack within the last two or three weeks."
 4. Prospective juror 71 — "Archie McNeal says that — he is a black deputy in the south end of Talladega County, said that she has real bad feelings towards Talladega County and towards law enforcement, that D.P. is related to her. A deputy by the name of Johnny — Donnie Green couple of years ago in trying to stop him for speeding, Donnie Green, the deputy, said that he shot at the tire of the car. The bullet actually entered the car and hit him, talking about Doug Powell, in the leg. There is a lawsuit that was — that was filed in that matter, in that matter, against Talladega County. And I think that lawsuit may still be pending, but he said that she would not be a good juror. She did not like law enforcement and had bad feelings towards the county and the sheriffs department."
 5. Prospective juror 88 — This juror was struck based on information from Frank Strickland that this juror had prior arrests. Strickland told the prosecutor that he had to serve warrants on him in the past.
The appellant does not challenge the use of one of the state's peremptory strikes against juror number 59, a black venireperson, who stated that the state was currently prosecuting someone related to her. However, this court has held this a race-neutral reason for striking a prospective juror. Leonard v. State, 551 So.2d 1143 (Ala.Cr.App. 1989);Powell v. State, 548 So.2d 590 (Ala.Cr.App. 1988), aff'd,548 So.2d 605 (Ala. 1989). This was also the reason given for striking prospective juror 75. Thus, the striking of prospective juror 75 was also race-neutral. *Page 649 
The appellant first challenges the state's striking of juror number 23. Upon review of the record, we find that that juror did indeed state that she was opposed to the death penalty. A veniremember's expression of reservations concerning the death penalty may be a valid race-neutral reasons for striking a prospective juror. Fisher, 587 So.2d at 1036. We find that the striking of juror number 23 did not violate Batson.
The main reason that the appellant challenges the striking of the prospective jurors is that the reasons given for striking several of the jurors were based on information from law enforcement that these individuals had been convicted or had relatives involved in illegal activities. We realize that strikes based primarily on reasons provided by law enforcement have in the past presented problems, Ex parte Thomas,601 So.2d 56 (Ala. 1992), Walker v. State, 611 So.2d 1133 (Ala.Cr.App. 1992). However, we find no Batson violation here.
As this court stated in Naismith v. State, 615 So.2d 1323
(Ala.Cr.App. 1993):
 "In Walker v. State, 611 So.2d 1133, 1140
(Ala.Cr.App. 1992), this Court held that '[a] prosecutor cannot simply presume, without further questioning to "dispel any doubt," that a veniremember, who is under oath, did not answer a question truthfully merely because the prosecutor has hearsay evidence to the contrary.' In Williams v. State, [Ms. 90-557, November 13, 1992] [620] So.2d [82, 85] (Ala.Cr.App. 1992), this Court held that 'the reason given for striking prospective juror number 24, because a narcotics officer had informed the district attorney's office that he 'knew this juror through his drug work,' " without saying more, is not a sufficient ground for a strike, and so is not considered to be a race neutral reason.' Both Walker and Williams support the principle that a prosecutor, in exercising a peremptory strike, may not always rely on hearsay information obtained from a law enforcement officer.
 "Here, the information from the police department was that the particular veniremember had either been arrested or convicted, so that the information obtained from the police department is not susceptible to the same objection as that obtained in Walker. . . .
 "In Jones v. State, 611 So.2d 466 (Ala.Cr.App. 1992), this Court addressed a factual situation very similar to that presented here and held that '[u]nder the circumstances presented here, the prosecutor's strike of veniremember # 14 on the ground that the sheriffs department had had "drug problems" with that person was racially-neutral.
 " 'Our holding in Walker does not apply here because in this case the prosecutor had information from the sheriff's department concerning the basis for each peremptory strike and because the prosecutor did not "simply presume, without further questioning to 'dispel and doubt,' that a veniremember who is under oath, did not answer a question truthfully merely because the prosecutor has hearsay evidence to the contrary." Walker, supra.
 " 'Here, the prosecutor did not exercise a "same name" strike. There is no indication that the sheriff's department was having drug problems with someone named "Carter" as opposed to this particular veniremember. Here, there was more than the "mere suspicion" of relationship. See Ex parte Bird, 594 So.2d 676, 683 (Ala. 1991). (a "prosecutor's self-imposed ignorance [should not] preclude a Batson claim." Id.
quoting Note, Batson v. Kentucky and the Prosecutorial Peremptory Challenge: Arbitrary and Capricious Equal Protection, 74 Va.L.Rev. 811, 827 (1988)). Compare Smith v. State, 590 So.2d 388, 390 (Ala.Cr.App. 1991) (wherein the court, in holding that the defendant may not cross-examine jurors or go behind the prosecutor's information to determine if such information was true, stated that a "prosecutor may strike from mistake, as long as the assumptions involved are based on an honest belief and are racially neutral").'
"Jones, 611 So.2d at 470." *Page 650 
615 So.2d at 1326. (Emphasis in original.) Cf. Williams v.State, 620 So.2d 82 (Ala.Cr.App. 1992).
Here, the reasons given by the prosecution were not based on hunches but were based on very specific reasons related to them by named law enforcement officials. We find no violation ofEx parte Thomas or of Walker. Striking a person with a prior conviction is a race-neutral reason. Leonard, supra. Also, striking a prospective juror because he or she has relatives who have prior convictions is a race-neutral reason and does not violate Batson. Leonard.
The prosecutor also gave a separate reason for striking prospective jurors 38 and 75 that was unquestionably race-neutral. They answered on voir dire that they had relatives with prior convictions.
We will reverse a trial court's ruling on a Batson motion only "[i]f that determination is clearly erroneous." Hart, 612 So.2d at 525. The court's ruling was not clearly erroneous here.
 V
The appellant argues that the search warrant authorizing the search of Derrick DeBruce's car was vague and overbroad and that, therefore, the gun discovered as a result of the search should have been suppressed.
As this court stated in Williams v. State, 601 So.2d 1062
(Ala.Cr.App. 1991):
 "When a motion to suppress evidence in a criminal case is based on the ground that the evidence was obtained in violation of the Fourth Amendment, one issue is whether the movant has standing to assert the claim and to seek the remedy of exclusion. See LaFave, 4 Search and Seizure, § 11.3 (2d ed. 1987). The rights afforded protection by the Fourth Amendment are personal rights. See Simmons v. United States, 390 U.S. 377, 389, 88 S.Ct. 967, 974, 19 L.Ed.2d 1247 (1967). To show that a party has standing to object to a search, the party must have a possessory interest in the premises searched. Rakas v. Illinois, 439 U.S. 128, [133-34], 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978). . . .
". . . .
 ". . . It is up to the defendant to show that he has a 'legitimate expectation of privacy' in the area searched. See Kaercher [v. State], 554 So.2d [1143] at 1148 [(Ala.Cr.App. 1989), writ denied, 554 So.2d 1152 (Ala. 1989)]. The factors to be considered in determining whether such expectation exists include whether he can exclude others from the place searched, whether he has exhibited a subjective expectation that the area would remain free from governmental invasion, and whether he took normal precautions to maintain his privacy."
Williams, 601 So.2d at 1070-71.
The appellant had no expectation of privacy in DeBruce's vehicle. Therefore, the appellant has no standing to challenge the search. We note that in DeBruce, this court upheld the validity of the search warrant.
 VI
The appellant next argues that the trial court erred in allowing Larry McCardle to identify him as one of the robbers. Specifically, he contends that the identification was tainted because, he says, McCardle did not identify the appellant until after he had seen his picture in the newspaper. There was no objection to McCardle's identification of the appellant. Thus, we must determine whether plain error exists here.
Here, Larry McCardle testified that before the robbery the appellant purchased some items in the store and asked him where the restroom was located. McCardle said that the appellant then held a gun to him and forced him to take him to the safe. They were together several minutes. McCardle also testified that he identified the appellant before seeing any picture in the newspaper. He further stated that he had no doubt that the appellant was the robber who held a gun to him. There is no evidence that McCardle's identification of the appellant was tainted in any way. Neil v. Biggers, 409 U.S. 188,93 S.Ct. 375, 34 L.Ed.2d 401 (1972). A similar issue was addressed and upheld in DeBruce, supra. *Page 651 
 VII
The appellant further contends that the prosecutors' actions in the guilt phase amounted to reversible error. First the appellant argues that the jury's findings were tainted because of, he said, the prosecutor used leading questions during LuJuan McCants's testimony. No objection was made at the time of McCants's testimony. Thus, we must review this issue under the plain error doctrine.
We have evaluated the two instances referred to in McCants's testimony. Each instance of leading questions was an attempt by the prosecutor to clarify testimony that had already been given by McCants. This did not affect the "substantial right[s] of the appellant." Rule 45, A.R.App.P.
The next complained-of instances concern statements made during the prosecutor's closing arguments. No objection was made at either instance cited by the appellant. "[T]he failure to object will weigh against any claim of prejudice." Ex parteHart, 612 So.2d 536, 537 (Ala. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 2450, 124 L.Ed.2d 666 (1993); Madison v. State,620 So.2d 62 (Ala.Cr.App. 1992).
 " 'This court has concluded that the failure to object to improper prosecutorial arguments . . . should be weighed as part of our evaluation of the claim on the merits because of its suggestion that the defense did not consider the comments in question to be particularly harmful.' Johnson v. Wainwright, 778 F.2d 623, 629 n. 6 (11th Cir. 1985), cert. denied, 484 U.S. 872, 108 S.Ct. 201, 98 L.Ed.2d 152 (1987)."
Kuenzel v. State, 577 So.2d 474, 489 (Ala.Cr.App. 1990), aff'd,577 So.2d 531 (Ala.), cert. denied, 502 U.S. 886,112 S.Ct. 242, 116 L.Ed.2d 197 (1991).
The appellant argues that the following comment made by the prosecutor in his closing argument was a statement of his personal opinion concerning the appellant's guilt.
 "Even though a bunch of people were there. McCardle, several of the witnesses said, well, as far as being — I'm not positive on that. Only McCardle says 'I'm positive on this one.' He probably wasn't looking at a tattoo. I've been in here in the courtroom with him for a week. I didn't notice the tattoo. If it is there today, if it was there on August 16th, I don't know. But I tell you this, I didn't notice it in the courtroom. But I sure wouldn't have noticed it with that right there pointing at me."
As the United States Supreme Court stated in Darden v.Wainright, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471,91 L.Ed.2d 144 (1986):
 "[I]t 'is not enough that the prosecutors' remarks were undesirable or even universally condemned.' The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' Donnelly v. DeChristoforo, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)."
(Citation omitted.)
We must evaluate the comment in the context of the entire proceedings.
 " 'Whatever is in evidence is considered subject to legitimate comment by counsel.' Bankhead v. State, 585 So.2d 97 (Ala.Cr.App. 1989), aff'd, 585 So.2d 112 (Ala. 1991). See also Ward v. State, 440 So.2d 1227 (Ala.Cr.App. 1983). 'The prosecutor has the right to present his impressions from the evidence. He may argue every matter of legitimate inference and may examine, collate, sift, and treat the evidence in his own way.' . . . Donahoo v. State, 505 So.2d 1067, 1072 (Ala.Cr.App. 1986)."
Williams, 601 So.2d at 1072-73. " '[C]ounsel in the trial of any lawsuit has the unbridled right (to be sure, duty) to argue the reasonable inferences from the evidence most favorable to his client.' " Kuenzel, 577 So.2d at 492, quoting Ex parteAinsworth, 501 So.2d 1269, 1270 (Ala. 1986). (Footnote omitted.) During the cross-examination of McCardle the defense asked him if the person holding a gun on him had any scars or tattoos. The comment made during closing was clearly based on the cross-examination of McCardle and was a legitimate inference from the evidence presented. " 'Counsel for the state and defendant are allowed a rather wide latitude in drawing their deductions from the *Page 652 
evidence.' " Kuenzel, 577 So.2d at 493, quoting Arant v. State,232 Ala. 275, 279, 167 So. 540, 543 (1936). No plain error exists here.
Next the appellant argues that in the following argument that the prosecutor stated facts not in evidence:
 "I think the Judge will tell you that a person commits the crime of manslaughter if he recklessly causes the death of another person, and I submit to you that pointing a gun at somebody, hitting them in the back of the neck, knocking them down, pointing the gun at them, and loading it before you get in there and then pulling that trigger, there is nothing reckless about that, folks. That is an intentional act. You know when you load it. You know when you walk in there, and you know when you use it. And you know when you pull that trigger that you intended to do something."
We must view the argument in relation to the whole trial. Before making the above statement the prosecutor told the jury that the state "does not contend that the Defendant was actually the person that pulled the trigger on this occasion." The prosecutor then went on in his argument to discuss the concept of complicity and then made the above argument. The above comment was a comment on the law on which the court was going to instruct the jury. A prosecutor can argue his interpretation of the applicable law in his closing argument.Middleton v. State, 495 So.2d 726 (Ala.Cr.App. 1986); Orr v.State, 462 So.2d 1013 (Ala.Cr.App. 1984); Lewis v. State,456 So.2d 413 (Ala.Cr.App. 1984). "A trial judge may properly allow a district attorney to comment in his . . . closing argument on the principles of conspiracy, aiding and abetting, and principal and accessory." Lewis, 456 So.2d at 416. No plain error occurred here.
The appellant further argues that the following argument impermissibly shifted the burden of proof to him.
 "There is not one shred of evidence, ladies and gentlemen, that there wasn't a robbery in the first degree committed at the Auto Zone on April — on August 16, 1991, in Talladega County, Alabama. They were armed, they took property, they threatened force, and they caused serious physical injury. Not one shred of evidence will prove otherwise. There is not one shred of evidence to prove otherwise than that there was an intentional killing of a human being. There is not any legal defense to what was done to Doug Battle on that occasion. He didn't deserve to die."
Again, the above comment was a legitimate inference from the evidence presented. Williams, supra. No plain error occurred in the above comment made in closing argument.
Last, the appellant argues that the prosecutor attempted to portray LuJuan McCants as an "impressionable child." The prosecutor stated in closing that McCants was just 16 years old and was following the appellant, who was 41 years old at the time of the robbery-murder. Again this argument was a legitimate inference from the evidence presented. No plain error occurred here.
Furthermore, the court went to great lengths in its oral charge to instruct the jury that statements of counsel are not evidence.
 VIII
The appellant next argues that the trial court erred in its instructions to the jury at the guilt phase. Initially we observe that after the court gave its charge to the jury, defense counsel announced that he was satisfied. Thus because no objections were made to any instructions, either those given or those not given by the trial court, this court must apply the plain error rule. Rule 45A, A.R.App.P.
We must view the entire instructions as a whole. "[T]he entire charge must be construed as a whole and . . . the language of the charge must be given a reasonable construction, and not a strained and unreasonable one." Carroll v. State,599 So.2d 1253, 1270 (Ala.Cr.App. 1992), aff'd, 627 So.2d 874
(1993). See also Kuenzel, supra.
Initially, the appellant argues that the court's instruction on the element of intent was erroneous.
To be convicted and sentenced to death in Alabama, the individual must have a *Page 653 
"particularized intent to kill." Kennedy v. State,472 So.2d 1092 (Ala.Cr.App. 1984), aff'd, 472 So.2d 1106 (Ala.), cert. denied, 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985). See also §§ 13A-2-23, 13A-5-40(a)(2), (b), (c), (d), 13A-6-2(a)(1), Code of Alabama 1975. The jury must be charged on specific intent. Kennedy.
Here the trial court gave the following instruction:
 "This indictment charges the Defendant with a capital murder, being murder during robbery. If you are convinced beyond a reasonable doubt that the Defendant committed the crime of murder of the intentional killing type during a robbery in the first degree as alleged in the indictment, it would be your duty to find the Defendant guilty of a capital offense.
 "The two components of a capital offense are robbery in the first degree and murder of the intentional killing type committed during the robbery in the first degree.
". . . .
 ". . . Now, a defendant commits the crime of murder of the intentional killing type if, with intent to cause the death of another person, he causes the death of that person or another person. A person acts intentionally with respect to a result or to conduct when his purpose is to cause that result or to engage in that conduct.
 "The Defendant must intentionally, as opposed to negligently, accidentally, or recklessly, cause the death of the deceased in order to invoke the capital offense. The fact that someone dies or is killed during the course of a robbery does not automatically provide that intent. The intent to kill must be real and specific in order to invoke the capital statute."
(Emphasis added.)
The court thoroughly instructed the jury on intent and gave the following instruction concerning complicity:
 "Now, the following law of complicity would only apply relative to the intentional killing element of capital murder. If you find that a murder of the intentional killing type of Doug Battle was committed by some person or persons other than the Defendant, the Defendant is guilty of that intentional killing type of murder if, but only if, you find beyond a reasonable doubt either that the Defendant intentionally procured, induced, or caused the other person or persons to commit the crime or that the Defendant intentionally aided or abetted the other person or persons in the commission of the murder."
The trial court correctly charged the jury on the element of intent applicable to capital cases. No plain error occurred here.
 IX
The appellant next argues that the trial court committed reversible error in failing to instruct the jury on the law relating to accomplice corroboration. § 12-21-222, Code of Alabama 1975. Again no objection was made to the lack of this instruction.
The appellant maintains that Barbara Spencer and LuJuan McCants were accomplices and that, therefore, any testimony by them had to be, according to law, corroborated. § 12-21-222.
From the record it is clear that Barbara Spencer was not an accomplice, as a matter of law. There was absolutely no evidence that she took part in any discussions concerning the robbery or the actual crime. She testified that she did receive $100 from the proceeds, which she said she gave to McCants. However, this action alone would not make her an accomplice. "An accomplice is defined as ' "an associate in crime; a partner or partaker in guilt." ' Darden v. State, 12 Ala. App. 165,167, 68 So. 550, 551 (1915)." Jacks v. State,364 So.2d 397, 401-402 (Ala.Cr.App.), cert. denied, 364 So.2d 406 (Ala. 1978).
McCants, however, freely admitted to participating in the crime and was clearly an accomplice to the robbery-murder. The court should have instructed the jury concerning the need for corroborative evidence of McCants's testimony. However, the failure to do so does not mean that this cause must automatically be reversed. Automatic reversal exists only when the error "necessarily render[s] a trial fundamentally unfair."Rose v. Clark, 478 U.S. 570, 3105, *Page 654 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986). Alabama has applied the harmless error analysis in a case involving the death penalty to the failure of the court to instruct the jury on the principle of accomplice corroboration. Gurley v. State,639 So.2d 557 (Ala.Cr.App. 1993); Frazier v. State, 562 So.2d 543,558 (Ala.Cr.App.), rev'd on other grounds, 562 So.2d 560 (Ala. 1989).
As Judge Bowen stated in Gurley:
 "[T]he error of failing to instruct the jury on the need for corroborative evidence is harmless when the testimony of an accomplice has in fact been corroborated. Frazier v. State, 562 So.2d 543, 558 (Ala.Cr.App.), reversed on other grounds, 562 So.2d 560 (Ala. 1989). Accord People v. Brunner, 797 P.2d 788, 790 (Colo.App. 1990); State v. Brown
[187 Conn. 602], 447 A.2d 734, 740 (Conn. 1982); Ali v. United States, 581 A.2d 368, 377-78
(D.C.App. 1990), cert. denied, 502 U.S. 893, 112 S.Ct. 259 [116 L.Ed.2d 213] (1991); Strong v. State
[261 Md. 371], 275 A.2d 491, 495 (Md. 1971), vacated on other grounds, 408 U.S. 939
[92 S.Ct. 2872, 33 L.Ed.2d 760] (1972); State v. England, 409 N.W.2d 262, 265 (Minn.App. 1987).
 " 'Corroborative evidence need not directly confirm any particular fact nor go to every material fact stated by the accomplice.' Andrews v. State, 370 So.2d 320, 322 (Ala.Cr.App.), cert. denied, 370 So.2d 323 (Ala. 1979). . . .
 "In Hood v. State, [598 So.2d 1022 (Ala.Cr.App. 1991)] this Court observed:
 " 'The appellant . . . insists that because the "for hire" element of the capital offense was not independently corroborated, the State did not establish a prima facie of capital murder. That is not the law in Alabama.
 " 'As early as 1867, our Supreme Court held that a charge requiring corroboration of "every material part" of an accomplices's testimony "went beyond the requirements of the statutory rule, or any rule recognized by the common law." Montgomery v. State, 40 Ala. 684, 688 (1867). More recently, in Ex parte Bell, 475 So.2d 609, 613 (Ala. 1985), a capital case, the court held that Ala. Code 1975, § 12-21-222, "does not require corroborative testimony as to material elements of the crime; it only requires other evidence 'tending to connect the defendant with the commission of the offense.' " See also Andrews v. State, 370 So.2d 320 (Ala.Cr.App.), cert. denied, 370 So.2d 323 (Ala. 1979), wherein this court observed:
 " ' "The corroboration of an accomplice must tend to connect the accused with the commission of the crime but need not refer to any statement or fact testified to by the accomplice. 'Corroborate means to strengthen, to make stronger; to strengthen, not the proof of any particular fact to which the witness has testified, but to strengthen the probative, criminating force of his testimony.' . . . Corroborative evidence need not directly confirm any particular fact nor go to every material fact stated by the accomplice.'
"Hood v. State, 598 So.2d at 1024-25."
Gurley, 639 So.2d at 561-62. See also Solis v. State,792 S.W.2d 95 (Tex.Cr.App. 1990).
Here, there was absolutely no doubt that McCants's testimony was corroborated by other evidence presented at trial. No plain error exists here.
 X
The appellant further argues that the trial court's reasonable doubt instruction was flawed because, he says, the court failed to define the phrase "to a moral certainty." The court gave the following instruction on reasonable doubt:
 "Now, what is a reasonable doubt? When I say that the State is under the burden of proving guilt beyond a reasonable doubt and to a moral certainty, that does not mean that the State must prove an alleged crime beyond every imaginable or speculative doubt or beyond all possibility of mistake, because that would be impossible. A reasonable doubt means an actual doubt. Could arise out of the testimony in a case or it could arise from a lack of testimony in a case. It is a doubt for which a reason can be assigned, and the *Page 655 
expression 'to a moral certainty' means practically the same thing as beyond a reasonable doubt. Because if you are convinced to the point where you no longer have a reasonable doubt, then you are convinced to a moral certainty."
This reasonable doubt instruction given by the court is similar to the instruction given in Smith v. State,588 So.2d 561 (Ala.Cr.App. 1991), and found not to violate Cage v.Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), and to be a permissible instruction on reasonable doubt.
 XI
The appellant next argues that the trial court erred in instructing the jury that it had a duty to find the appellant guilty. However, this argument fails to look at the complete charge that was given to the jury. The court stated the following:
 "This indictment charges the Defendant with a capital murder, being murder during robbery. If you are convinced beyond a reasonable doubt that the Defendant committed the crime of murder of the intentional killing type during a robbery in the first degree as alleged in the indictment, it would be your duty to find the Defendant guilty of a capital offense."
Initially, we observe that no objection was made to this instruction. Thus we apply the plain error rule. Rule 45A, A.R.App.P. This instruction was not erroneous. As Judge Bowen stated in Kuenzel:
 "In a real sense, a jury does have the 'duty' to convict the accused of the offense charged in the indictment if it finds the accused guilty of that offense beyond a reasonable doubt. 'A jury is not empowered to waive the law or any of its rules — its only power is to take the law of the case as given by the trial judge and apply it to the facts as developed on the trial. Out of this process comes the verdict.' Patterson v. State, 45 Ala. App. 229, 236, 228 So.2d 843, 849 (1969). 'Admonition of the high and sacred duty resting upon juries by nisi prius judges should be encouraged rather than condemned.' Hope v. State, 21 Ala. App. 491, 492-93, 109 So. 521, 522 (1926). See also Dolan v. State, 81 Ala. 11, 16-17, 1 So. 707, 711 (1887). The trial judge did not violate the principle that '[c]ourts may instruct the jury as to the law of the case, but they may not instruct a jury as to what verdict they shall render in a criminal case on a given statement of facts.' Woodham v. State, 28 Ala. App. 62, 64, 178 So. 464, 466 (1938)."
577 So.2d at 517.
 XII
The appellant next argues that the trial court erred in instructing the jury that a legal presumption existed against a witness who it felt testified falsely. The court gave the following instruction:
 "Now, it is a duty of a jury to reconcile all of the testimony in the case, and to make it all speak the truth if you can do so. If you cannot, then, as a juror, you have the right to reject any portion that you believe to be untrue and consider only that which you believe to be true.
 "In determining the truth of the testimony in the case, you have the right to do like you would in your ordinary affairs of life; that is, to use your common sense and everyday understanding.
 "If you find that any witness in this case has willfully or corruptly testified falsely as to a material matter, then you have the right to take that into consideration in determining just what weight you will give that witness's testimony. If he or she has corruptly testified falsely to a particular material matter, then you have the right to disregard that witness's entire testimony. You have the right also to consider any bias, interest, friendship, or relationship or any other matter that might cause the witnesses to depart from the truth."
The appellant argues that this instruction informed the jury that they had to doubt all of the appellant's testimony if they disbelieved any part of it. We do not agree. This instruction was not a mandatory instruction that forced the jury to disregard any testimony presented at trial. The instruction was permissive and this court has found such instruction allowable. As stated in Crumpton *Page 656 v. State, 402 So.2d 1081 (Ala.Cr.App.), cert. denied,402 So.2d 1088 (Ala. 1981):
 "Appellant is correct that a falsus in uno charge requiring, instead of permitting, the jury to disbelieve a witness is error. See Lowe v. State, 88 Ala. 8, 7 So. 97 (1889); Watson v. State, 19 Ala. App. 267, 97 So. 118 (1923); Butler v. State, 16 Ala. App. 234, 77 So. 72 (1917). The charge must be phrased in permissive ('may disregard') rather than mandatory ('must disregard') terms."
402 So.2d at 1087. See also 4 A.L.R.2d 1077 (1949).
We have reviewed the instructions given by the court in the guilt phase in their entirety and find them both thorough and accurate.
 XIII
The appellant next challenges the penalty phase of the proceedings. The appellant initially argues that the trial court interfered with his attorney-client relationship by calling two of his codefendants to the stand after his attorney had told the court that they could add nothing that would help the appellant in mitigation.
The record clearly shows that it was the appellant's wish to call these two witnesses. The court had a lengthy colloquy with the appellant concerning his desire to have his two codefendants testify at the penalty phase of the proceedings. The court, after talking with the appellant, complied with his wishes.
An attorney represents a criminal defendant and is obliged by Rule 1.2, Alabama Rules of Professional Conduct, to "abide by a client's decisions concerning the objectives of representation. . . ." An attorney can only make recommendations to a client as to how to conduct his defense; the ultimate decision, however, lies with the client. There was no interference with the attorney-client relationship here, when the trial court was honoring the appellant's wishes.
The appellant also argues that by permitting the two codefendants to testify the trial court allowed collateral evidence to be received into evidence that did not relate to his sentence. The two codefendants were questioned about whether they had been at City National Bank in Sylacauga earlier on the day of the robbery-murder. Both witnesses denied knowing the appellant. The prosecution then asked about their being at the bank with the appellant on the same day as the murder. All of this evidence was admissible at the penalty phase. "Any evidence which has probative value and is relevant to sentence shall be received at the sentence hearing regardless of its admissibility under the exclusionary rules of evidence . . ." § 13A-5-45(d), Code of Alabama 1975. The evidence was relevant to show that the men were together on the day of the robbery-murder.
 XIV
The appellant next argues that the prosecutor committed error in his closing argument in the penalty phase. Initially, we observe that no objection was made to this during trial. "[T]he failure to object will weigh against any claim of prejudice."Ex parte Hart, 612 So.2d at 537.
Initially, the appellant contends that the prosecutor argued facts not in evidence. Specifically, he argues that the prosecutor incorrectly stated that the appellant was the leader. However, this was an inference that could have been drawn from McCants's testimony. McCants testified that the appellant told the others what to do before they entered the Auto Zone. Any argument that the prosecutor made that was a legitimate inference that could have been drawn from testimony presented at trial is not error. Kuenzel, supra.
The appellant next contends that he was prejudiced by the prosecutor's argument concerning his history of criminal conduct. The appellant argues that the following argument presented nonstatutory aggravating factors for the jury to consider.
 "The mitigating circumstances, I would like to go over each of those with you because it's [sic] matters for y'all to consider. The mitigating circumstances, but they are not limited to just these. And there will be another Code section. They *Page 657 
are limited to anything that this jury wishes to consider relative to character or other matters. Number one, the defendant has no significant history of prior criminal activity. The State is allowed to introduce into evidence documents, and you have heard the witnesses. And I know it took a long time, but we have to prove that this man is the same man that was convicted in these cases that go back to 1970 or 1971. . . .
 "So, I would submit to you that the Defendant in this particular case does not have that. . . . He has a significant history of criminal activity. So, he would not meet that first mitigating circumstance that says the defendant has no significant history of prior criminal activity when, in fact, he's got, I submit to you, a substantial record. And, in fact, going back probably 20 years of criminal activity.
". . . .
 "Six, the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired. Impaired by some mental defect or something like that. There is no evidence to that. And certainly if anybody knows the criminal justice system and the criminal laws, it is the defendant. Because he certainly had plenty of experience with the court system and plenty experience with the police and criminal justice system."
(Emphasis added.) This was not an inappropriate argument. The prosecutor was going down the list of statutory mitigating circumstances. This court in McWilliams v. State, 640 So.2d 982
(Ala.Cr.App. 1991), aff'd in part, remanded on other grounds,640 So.2d 1015 (Ala. 1993), found that the prosecutor did not err when during his closing argument he went down the list of statutory mitigating circumstances and argued that none applied.
The appellant also argues that the prosecutor incorrectly stated that the jury was not to let sympathy affect its decision to vote for death or life imprisonment without parole. "A prosecutor's argument 'in telling the jury not to let sympathy, emotions, or compassion affect its decision . . . did not result in any error.' " DeBruce, 651 So.2d at 613; quotingStewart v. State, 601 So.2d 491, 506 (Ala.Cr.App. 1992). SeeCalifornia v. Brown, 479 U.S. 538, 107 S.Ct. 837,93 L.Ed.2d 934 (1987).
 XV
The appellant next argues that the trial court erred by stating during its instruction in the penalty phase that the jury's decision was a recommendation. We have previously held that the trial court does not diminish the jury's role or commit error when it states during the jury charge in the penalty phase of a death case that the jury's verdict is a recommendation or an "advisory verdict." White v. State,587 So.2d 1218 (Ala.Cr.App. 1990), aff'd, 587 So.2d 1236 (Ala. 1991), cert. denied, 502 U.S. 1076, 112 S.Ct. 979,117 L.Ed.2d 142 (1992).
 XVI
The appellant was convicted of the capital offense of murder during the course of a robbery in the first degree. The appellant argues that the fact that robbery was counted both as an element of capital murder during the guilt phase of the trial, under § 13A-5-40(a)(2), Code, of Alabama 1975, and as an aggravating circumstance during the penalty phase of the trial, under § 13A-5-49, violated his Sixth, Eighth, and Fourteenth Amendment rights under the United States Constitution and his rights under Alabama law. This practice, known as "double counting" or "overlapping," has been upheld. Haney v. State,603 So.2d 368 (Ala.Cr.App. 1991), aff'd, 603 So.2d 412 (Ala. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1297,122 L.Ed.2d 687 (1993); Kuenzel, supra.
Section 13A-5-50, Code of Alabama 1975, states, in part, as follows:
 "The fact that a particular capital offense as defined in section 13A-5-40(a) necessarily includes one or more aggravating circumstances as specified in section 13A-5-49 shall not be construed to preclude the finding and consideration of that relevant circumstance or circumstances in determining sentence."
Clearly, § 13A-5-50 provides that a jury may consider an element of capital murder as *Page 658 
an aggravating circumstance if that element is listed in §13A-5-49. Further, this court has repeatedly held that the use of an element of capital murder in such a way does not, as the appellant argues, punish a defendant twice for the same offense. Kuenzel, supra; see also Ex parte Kennedy,472 So.2d 1106 (Ala.), cert. denied, 474 U.S. 975, 106 S.Ct. 340,88 L.Ed.2d 325 (1985).
 "A capital punishment scheme, under which the same felony may form the basis of an essential element of the crime and an aggravating circumstance for consideration by the jury in recommending a sentence, does not constitute a denial of the guarantee against double jeopardy."
Kuenzel, 577 So.2d at 488, quoting Fortenberry v. State,545 So.2d 129, 142 (Ala.Cr.App. 1988), aff'd, 545 So.2d 145 (Ala. 1989), cert. denied, 495 U.S. 911, 110 S.Ct. 1937,109 L.Ed.2d 300 (1990).
 XVII
Last, as provided in § 13A-5-53, Code of Alabama 1975, this court is required to address the propriety of appellant's conviction and sentence to death. The appellant was indicted and was charged with murder made capital because the murder was committed during the course of a robbery in the first degree. Section 13A-5-40(a)(2), Code of Alabama 1975.
The record reflects that the appellant's death sentence was not the result of the influence of any passion, prejudice, or any other arbitrary factor. Section 13A-5-53(b)(1), Code of Alabama 1975.
A review of the record shows that the trial court found that the aggravating circumstances outweighed the mitigating circumstances. The court found no statutory or nonstatutory mitigating circumstances. The trial court found that the aggravating factor was that the murder was committed during the course of a robbery. § 13A-5-40(a)(2). The trial court's findings show that it weighed the aggravating circumstances and the mitigating circumstances and correctly sentenced the appellant to death. The trial court's decision is supported by the record, and this court agrees with the trial court's findings.
This court must, as required by § 13A-5-53(b)(2), independently weigh the aggravating and the mitigating circumstances to determine the propriety of the appellant's sentence to death. We have independently weighed the aggravating and the mitigating circumstances and have found the appellant's sentence to death appropriate in this case.
Under § 13A-5-53(b)(3), this court must address whether the appellant's sentence to death was disproportionate to or excessive when compared to the sentences imposed in similar cases. It was neither. The appellant argues that because he was not the triggerman and did not intend to kill he should not be sentenced to death.
 "In Enmund v. Florida, 458 U.S. 782, 797
[102 S.Ct. 3368, 3368, 73 L.Ed.2d 1140] (1982), the Court held that the death penalty is unconstitutional for one who 'does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed.' In Tison v. Arizona, 481 U.S. 137 [107 S.Ct. 1676, 95 L.Ed.2d 127] (1987), the Court held that it was not cruel and unusual punishment to impose the death penalty upon a defendant who played a significant role in the felony that resulted in murder and who acted with reckless indifference to human life. The rule that has evolved from Enmund and Tison is that the death sentence is disproportionate under the Eighth Amendment for the non-triggerman who was not present at the scene and did not intend that anyone be killed; however, it is permissible under the Eighth Amendment for felony murderers who actually killed, attempted to kill, or intended that a killing take place or that lethal force be used.
". . . .
 "Applying the Enmund test to the instant case, we find that appellant was sufficiently involved in the killing to constitutionally authorize the application of the death penalty to her, even though she was an accomplice non-triggerman."
Haney, 603 So.2d at 386.
The appellant played a significant part in the robbery-murder. Although he was not the actual person to pull the trigger, *Page 659 
the appellant's degree of participation in the robbery-murder makes the application of the death sentence constitutional in this case.
Nor was the appellant's sentence disproportionate to the crime committed. "In Beck [v. State, 396 So.2d 645 (Ala. 1981),] the Alabama Supreme Court noted that of the 50 cases it studied, 33, or 66%, were robbery-intentional killing cases." Colquitt, Death Penalty Laws, 33 Ala., L.Rev. 213, 225 (1982). Other cases in which the death penalty has been upheld for robbery-murders are McMillian v. State, 594 So.2d 1253
(Ala.Cr.App. 1991), Williams v. State, 601 So.2d 1062
(Ala.Cr.App. 1991), Hallford v. State, 548 So.2d 526
(Ala.Cr.App. 1988), aff'd, 548 So.2d 547 (Ala.), cert. denied,493 U.S. 945, 110 S.Ct. 354, 107 L.Ed.2d 342 (1989).
Last, as required by Rule 45A, A.R.App.P. we have searched the record for any error that would have adversely affected the appellant's substantial rights and have found none.
The appellant received a fair trial. The appellant's conviction and sentence of death are due to be, and they are hereby, affirmed.
AFFIRMED.
All the Judges concur.
[1] This court recently affirmed DeBruce's conviction and sentence to death in DeBruce v. State, 651 So.2d 599 (Ala.Cr.App. 1993).
[2] Barbara Spencer is Deon Long's mother.
[3] The appellant also argues in a footnote in his brief to this court that he should have been allowed to conduct individual voir dire. However, the trial court is not compelled to allow individual voir dire of prospective jurors even in a case involving the death penalty. Whether to allow individual voir dire is generally within the discretion of the trial court.Bell v. State, 475 So.2d 601 (Ala.Cr.App. 1984), aff'd,475 So.2d 609 (Ala.), cert. denied, 474 U.S. 1038, 106 S.Ct. 607,88 L.Ed.2d 585 (1985).
[4] There is some question as to whether the defense established a prima facie case of discrimination here. Approximately 33% of the prospective jurors were black and the 12-member jury contained 50% blacks. The two alternates were white.