[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-12108
_____

D.C. Docket No. 4:05-cv-00308-CLS-PWG


CHARLES L. BURTON, JR.,

                    Petitioner - Appellant,

versus

COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS,

                    Respondent - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(November 7, 2012)

Before TJOFLAT, MARCUS, and WILSON, Circuit Judges.

WILSON, Circuit Judge:

        Death row inmate Charles Burton appeals from the denial of his petition for

a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Burton asserts that he was denied the effective assistance of counsel at the penalty phase of his capital murder trial when the court interfered with his counsel's mitigation strategy and when his counsel did not object to the interference. After reviewing the record and considering the arguments presented in the briefs and at oral argument, we affirm.

I.

Burton was convicted and sentenced to death for capital murder in an Alabama state court. *See* Ala. Code § 13A-5-40(a)(2). The murder occurred while Burton and five others robbed an AutoZone store. Burton was not the triggerman. The robbery was winding down, and he had already left the store when another member of the group shot and killed a customer. The state painted Burton as the group ringleader, and the jury convicted him of capital murder based on the state's accomplice liability theory.

The penalty-phase proceeded before the same jury. During that phase, a disagreement arose between Burton and his lawyers over which mitigation witnesses to call on Burton's behalf. Burton wanted to call two of his co-defendants (Andre Jones and Willie Brantley) to testify for him. Although they were warned that their testimony could be used against them in their own separate

2

trials, both co-defendants agreed to testify for Burton.  But Burton's lawyer advised against using them.  When the disagreement was brought to the attention of the trial judge, Burton's counsel explained, "neither of [the witnesses] can give any testimony that would mitigate my client's guilt in this case."  The court engaged Burton in a brief colloquy:

Court:     Okay.  Mr. Burton.

Burton:    Yes, sir.

Court:     You have heard the recommendation of your lawyers stated in open court relative to these two witnesses not being called, that they don't desire to call them, and they've indicated that you want to call them.  Is that your desire?

Burton:    Yes, sir.

Court:     Okay, I am going to allow you to call them.

Burton:    It was my desire to call them earlier before this - - before the sentencing phase became, you know, but they advised me that, you know, that - -

Court:     You answered my question.  That's fine.

The court then ordered Burton's counsel to call Jones and Brantley as witnesses. Burton expected their testimony to reinforce his alibi defense, even though that defense was unsuccessful during the guilt phase of trial.  Both men took the stand and denied participation in the robbery, and denied knowing Burton.  But Burton's

3

strategy backfired because their testimony opened the door to previously inadmissible impeachment evidence that Burton now claims irreparably damaged his counsel's mitigation strategy. The state was able to admit into evidence Jones's post-arrest confession admitting his participation in the AutoZone robbery with Burton and the other co-defendants. The state also used Jones's confession confirming the group's initial intention to rob a bank in Sylacuaga, Alabama. The confessions were corroborated by a bank surveillance videotape purportedly showing Jones, Brantley, and Burton together, inside the City National Bank in Sylacuaga, shortly before the robbery of the AutoZone. In addition, two AutoZone customers testified and identified Jones and Brantley as members of the group that robbed the store.

Family members also testified with the intention of establishing mitigating factors, but Burton claims the fire could not be put out. Burton now contends that by allowing him to present his co-defendants' testimony, the court impermissibly interfered with his counsel's mitigation strategy, and he further contends that the impeachment evidence insulted and inflamed the jury and undermined his credibility. Burton argues that the co-defendants' testimony reinforced the state's theory that he was the ringleader of the group, and that he was ultimately responsible for the death that occurred at the store.

4

The jury recommended a death sentence by a unanimous vote. The trial judge found two aggravating factors: (1) Burton had been convicted of eight prior felonies, and (2) the offense was committed during the commission of a robbery. The judge concluded that no mitigating circumstances existed. Accepting the jury's recommendation, the judge sentenced Burton to death.

Burton argued that he was denied the effective assistance of counsel in a petition for post-conviction relief filed in accordance with Rule 32 of the Alabama Rules of Criminal Procedure. The Alabama Court of Criminal Appeals denied the petition, reasoning that Burton's counsel was not ineffective because Burton had the ultimate right to determine which witnesses to call and that "[c]ounsel was not ineffective because [Burton] rejected their advice." *Burton v. State*, CR-00-2472, slip op. (Ala. Crim. App. Feb. 20, 2004).

## II.

### A.

The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, prohibits federal courts from granting habeas relief unless the state court's adjudication of the claim for relief "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

5

States." 28 U.S.C. § 2254(d)(1). To be "contrary to" clearly established Supreme Court precedent, the state court's decision must either (1) apply a rule that contradicts the governing law set forth by the Supreme Court or (2) arrive at a different result than the Supreme Court decision in the face of materially indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694, 122 S. Ct. 1843, 1850 (2002). There is an unreasonable application of clearly established federal law if "the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of the particular case." *Id.* We will not find an unreasonable application if "fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 786 (2011) (internal quotation marks omitted).

## B.

Despite Burton's arguments on appeal, the sole issue in this case is whether the ultimate authority to call a witness at trial belongs to counsel or the client. Wherever the decision-making authority properly rests in this trial scenario, the Supreme Court has not yet spoken on the issue.

In the current matter, the state trial court determined that the decision to call witnesses ultimately rests with the client. On direct appeal, the Alabama Court of

6

Criminal Appeals agreed, concluding that while "[a]n attorney can . . . make recommendations to a client as to how to conduct his defense . . . the ultimate decision . . . lies with the client." *Burton v. State*, 651 So. 2d 641, 656 (Ala. Crim. App. 1993). Accordingly, the Alabama Court of Criminal Appeals found that "[t]here was no interference with the attorney-client relationship . . . when the trial court was honoring the [defendant]'s wishes." *Id*.

Under AEDPA, we cannot grant relief unless the state court's adjudication of the issue on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. 2254(d)(1); *see also Harrington*, 131 S. Ct. at 786-87. While the Supreme Court has said at various times, either in holding or in dicta, that certain fundamental decisions—such as whether to plead guilty, *Brookhart v. Janis*, 384 U.S. 1 (1966); waive a jury, *Taylor v. Illinois*, 484 U.S. 400 (1988); waive the right to counsel, *Faretta v. California*, 422 U.S. 806 (1975); testify on his or her own behalf, *Jones v. Barnes*, 463 U.S. 745 (1983); or take an appeal, *id*.—ultimately belong to the client, it has never had occasion to address the division of decision-making authority in the trial context of calling witnesses.

Burton points us to *Jones v. Barnes*, 463 U.S. 745, 103 S. Ct. 3308 (1983),

7

but this case affords no assistance because it does not involve a defendant's desire to call witnesses at trial against the advice of counsel. In fact, it did not involve the calling of witnesses at trial at all. Instead, *Jones* holds that a defendant does not have a constitutional right to compel appointed counsel to present on appeal every non-frivolous argument that the defendant advocates. 463 U.S. at 754, 103 S. Ct. at 3314. We do not read *Jones* as clearly establishing that a defendant is deprived of his constitutional right to counsel when his lawyers are forced to follow the defendant's strategic directives.

Burton also relies heavily on *Blanco v. Singletary*, 943 F.2d 1477 (11th Cir. 1991), as a basis for relief under AEDPA. However, *Blanco* is a pre-AEDPA case from this Court. As such, it cannot set forth any "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). What's more, the panel in *Blanco* did not reach, at least as a matter of holding, the question of whether the decision to call a witness belongs to the lawyer or to the client.

Burton has not and cannot point to any clearly established federal law from the United States Supreme Court on the question of whether the ultimate authority to call trial witnesses rests with counsel or the client. Consequently, AEDPA bars relief of Burton's claims.

8

**AFFIRMED**.